Keighler, *et al.*, *vs.* Savage Manufacturing Co.

(Decided July 22nd, 1858.)

---

# WM. H. KEIGHLER, and others, *vs.* THE SAVAGE MANUFACTURING COMPANY.

An appeal will not lie from an order granting or refusing to dissolve an injunction, until *answer* filed, and an *insufficient answer* is *no answer* for the purpose of an appeal, but it is for *this court*, and not the court below, *to judge* of the *sufficiency* of the answer, it being for the *appellate court* alone to determine when an appeal will lie.

A party submitting to answer must answer fully and frankly, and he who evidently and purposely holds back something, cannot complain if he find himself regarded with suspicion and distrust, and be refused that to which he may in truth be entitled, and under other appearances might have obtained.

According to the chancery practice of this State, the motion to dissolve an injunction, and exceptions to the answer, are heard and decided at the same time.

Where an answer refers to a *paper* as showing the dates and amounts of receipts from certain collaterals in the defendants' hands, to a correct and detailed statement of which the complainant was entitled, and such *paper* does *not appear in the record*, an exception for insufficiency in this particular must be sustained.

It is the duty of a factor to keep books, in which shall be correctly entered the transactions on account of his principal, and the latter is entitled to a correct copy of the entries, including all memoranda connected therewith.

Where a factor has rendered his account-sales regularly, and the same were settled with *full knowledge* of all their items, and the *names of purchasers* were not then required, it is unreasonable, at any considerable distance of time thereafter, to subject the *factor* to a demand for such names, if his conduct has been honest and faithful, and free from fraud or deceit.

A judgment is the highest exercise of judicial power; *prima facie* it imports verity, and, as to the parties to it, is conclusive, unless mistake or fraud be shown, and the *onus* is on those who impeach it; it should be interfered with or questioned only with great delicacy and circumspection.

If a judgment is confessed with the agreement that it is not an ascertainment of so much *actual* indebtness, but only a *security* for so much as thereafter might be ascertained to be due, equity will prevent any use of the judgment for a different purpose, but the proof of such an agreement must be abundantly full and explicit, so as to leave no doubt on the mind of the court.

Good faith is the paramount and vital principle of the law governing the relation of principal and factor; the latter cannot *purchase* for himself the property of his principal consigned to him for sale to others, except with the knowledge, consent and approbation of the principal, upon a free, full and frank disclosure of every circumstance connected with the transaction, and a total absence of all fraud and concealment.

APPEAL from the Equity Side of the Superior Court of Baltimore city.

This appeal was taken from an order of the court below (LEE, J.,) continuing till final hearing, or further order, an injunction which had been granted upon a bill filed by the appellee against the appellants, and sustaining certain exceptions filed by the complainant to the answer of the defendants, for insufficiency.

The bill alleges that the defendants, as partners under the co-partnership name of Duvall, Keighler & Co., were, from the 1st of January 1850, to the 1st of June 1851, agents and factors for the sale of cotton goods manufactured by the complainant; that becoming somewhat embarrassed, and being sued by other creditors, complainant, at the September term 1852 of the circuit court for Howard county, in accordance with previous assurances, confessed a judgment in favor of the defendants for the nominal sum of $10,000, as a *collateral security* to secure *such amount of indebtedness* to them *as upon a full and fair accounting, might thereafter be ascertained to*

*be due*, and that this judgment was confessed upon the express agreement and understanding that the same was but a *collateral security*, and designed to put the defendants in the same condition precisely, as to security, as were the other creditors who had sued; that at the time this judgment was rendered, the defendants had in their hands, as collaterals for any sum that might be due them, one-half of a debt of $15,000, due the complainant by Mason & Son, of Baltimore, on their notes, and amply secured by mortgage, and which has been paid to the defendants, except perhaps a small part, for which the Masons have given them additional bills receivable; that complainant still confiding in the friendship of the defendants, and still consigning to them as usual, they, on the 22nd of March 1853, when complainant's chief officer or treasurer was, to their knowledge, lying dangerously ill, and when two of its corporators on whom, as the defendants well knew, complainant chiefly relied for the management of its affairs, were absent from Baltimore, and without any prior accounting with complainant, or applying and crediting to said judgment so much of said collaterals as had been realized, and the balance in process of being realized, and without any demand of any pretended indebtedness, and, in fact, without any notice or warning whatsoever to any stockholder or officer of complainant, issued a *fi. fa.* on the judgment so rendered merely as a collateral, and levied the same for the whole amount thereof upon all the lands and possessions of every kind and nature of the complainant; that this act of bad faith on the part of the defendants, in reference to a judgment confessed merely as a collateral, induced the complainant to investigate the accounts and dealings between them, for the purpose of ascertaining whether, upon a fair accounting, any and what amount was due upon the defendants' pretended claim, the great confidence which the complainant, through its agents, up to this time, had in the defendants, having lulled all suspicion as to the accuracy of their accounts.

The bill then charges, that upon such examination, so far as could be ascertained from the face of the accounts, enough appears to show that the accounts, sales, and accounts current

rendered complainant from the 1st of January 1850, to the 1st of June 1851, are untrue and fraudulent, and when properly restated, it will be found that defendants are indebted to the complainant; that many and large amounts of complainant's fabrics consigned to the defendants for sale to others, have been returned as sold, when, in fact, they themselves have secretly and without complainant's knowledge or consent, taken said goods to their own account, and have resold the same at great profits, for which they have not accounted; that from time to time they have sold complainant's goods to purchasers at less than their market value, as an inducement to such purchasers to buy defendants' own goods; that from time to time they have sold, without authority, goods of the complainant so consigned to them, at prices lower than the rates fixed therefor by complainant's agents, and, in violation of instructions given by such agents, have sold such goods, when such agents, anticipating an advance in prices, have directed them to be withheld from the market, and which anticipations have always been realized, and that at such times defendants have made large sales to themselves, on the eve of such advances, or when such advances were actually taking place, or had taken place, thereby realizing great profits to themselves, which ought to have enured to complainant, and have thereby deprived complainant of all benefit of the rise in value of said goods, when such rise took place; that they have also fraudulently returned sales of goods as having been sold as of certain dates, when, in point of fact, such sales were really made at dates long prior to those reported, and that such sales have, contrary to law and equity, been credited with interest, as if made on the last day of the months in which they were reported, and not from the actual dates on which they were really made; that by means of these devices and others unknown to complainant, and also by compounding interest on balances which included interest, the accounts rendered have included heavy charges for interest against complainant, whereas by a proper statement of the accounts, according to the actual dates of the transactions, a large amount of interest would be found due complainant; that such accounts also contain charges additional

Keighler, *et al.*, *vs.* Savage Manufacturing Co.

to that of five per cent. for commission properly chargeable, and also charges of five per cent. for commission and guaranty on goods not sold, but secretly taken to defendants' own account.

The bill further charges, that since the rendition of the aforesaid judgment, many and large payments on account by collaterals of complainant held by the defendants, have been paid to them, and which were made prior to the issuing of the execution thereon, and which were not credited on the judgment; that said accounts are fraudulent and inaccurate in divers other respects, which complainant is now unable to specify, because the same alone appear in the account books of the defendants, and to which complainant, by means of its officers and agents, has not access, and each and all of which said books of account, so far as the same contain any entries whatever relating to the sales of complainant's goods, are as much the books of the complainant, as principal, as they are the books of the defendants, as complainant's agents and factors; that with a view to obtain the exact truth of the matters before stated, complainant, through Geo. H. Williams, its attorney, and one of its corporators and directors, applied to the defendants for leave to examine said books so far as the same related to the affairs of complainant, which proper and lawful application has been steadily and constantly refused by them; that after the execution aforesaid was issued, a proposition for arbitration was made and assented to, but after considerable negotiation failed, principally because defendants found that their books of account would be required to be produced, and which they allege the law will not coerce them to produce, and after countermanding the execution preparatory to such arbitration, the defendants now threaten to renew the same.

The bill then prays an answer on oath, and that the defendants may exhibit an account with complainant, setting forth truly and accurately, from the 1st of January 1850, to the 1st of June 1851, the exact day and date of all the sales of complainant's goods sold by them, the quantity thereof on each date, the persons to whom the same were sold, and the residence of such purchasers, the true prices and credits on

which the same were sold respectively; that they may set forth a true and accurate account of the quantity of goods taken to their own account, as aforesaid, and the times respectively when so taken, and their subsequent disposition of the same, the times and dates when, and the exact prices and credits at which, and the names and residences of the purchasers to whom the same were sold; also an exact statement of the times, prices, and names and residences of the purchasers, and the quantities of goods sold at less than the market price to induce sales of their own goods, and that the defendants may produce and discover each and all of the original books of account and entries containing any and every account whatsoever, relating to the sales of complainant's goods, and that, upon such production and discovery thereof, complainant may be permitted to surcharge and falsify the same, as well in the particulars herein mentioned, as in all others which may be made apparent in the progress of the cause, and for an injunction restraining the defendants from all further proceedings upon the judgment aforesaid, and for general relief.

The injunction was granted accordingly, upon bond in the penalty of $15,000 fixed and approved by the judge.

The answer in reference to the judgment, explicitly denies that it was taken as a security merely for a nominal sum of $10,000, or as a collateral security to cover any balance that might thereafter be ascertained to be due, upon a full and fair accounting between the complainant and the defendants, but they state that it was given as a *specific* security for $10,000, parcel of an acknowledged indebtedness of complainant to the defendants, then existing, of $14,862.36, and that it was intended *to convert* that amount of indebtedness into a judgment, so as to take it out of their account current, and that it was accordingly taken out, and has thenceforth been considered and treated as a *judgment debt*. They further show that this judgment was confessed by the complainant in the face of opposition, in open court, of Amos A. Williams, one of the corporators of the company, and at that time in litigation with it, and with the sanction of all the parties then having the management and control of the corporate affairs of the complainant.

They further show that they had advanced for the complainant, by payment to another firm, with the concurrence of the complainant, a large amount of money, and which furnished part of the indebtedness of complainant to the defendants at the time this judgment was given.

The answer then denies all fraud of every kind imputed to the defendants, and proceeds to answer at length the several allegations of the bill, but for the purpose of this appeal, it is only necessary to state such parts thereof as the exceptions sustained by the order appealed from refer to.

These respondents state, that after the rendition of said judgment, they, under the written instructions of their counsel, credited complainant in their account current, as of the 20th of September 1852, with the amount of the judgment, and opened a new account, termed judgment account of the Savage Manufacturing Company, and after applying the collaterals as received to the extinguishment, in the first instance, of the balance due respondents on the old account current, there was a balance remaining to the credit of the company—the proceeds of said collaterals—of $1647.07 to be credited as of the 15th of February 1854, in part of the judgment for $10,000, bearing interest from the 31st of March 1853, to which last mentioned day interest thereon was paid by the complainant. In another part of the answer they say, on this point, they admit they held as security one-half of certain collaterals, being a debt due the complainant by Mason & Son, and that from said collaterals they realized certain sums which paid the residue of the indebtedness of the complainant, over and above the amount of the judgment, and produced a balance in payment *pro tanto* of said judgment as of the 15th of February 1855, of $1647.07, and they deny that they have received any further sum, in any way, on account of said judgment, except payment of the interest thereon up to the 31st of March 1853.

They say it is not true that they took goods to their account secretly, and without the knowledge or consent of the complainant. They admit it is true that goods were taken to their account at several times, but always with the full knowledge,

consent and approbation, and sometimes at the pressing solici-
tation of George Williams, the known and authorized agent of
the company, and with whom chiefly, during his lifetime,
respondents had intercourse in their dealings with the com-
plainant. And in this connection they state that it frequently
happened that purchasers desired to purchase in quantities less
than a bale, and in order to supply them with complainant's
goods, respondents would take to account a bale at the then
current rate, and that this course of dealing was well known
to, acquiesced in, and approved of, by said George Williams,
and was, in fact, beneficial to the complainant, and that it
sometimes happened that the prices at which the goods were
so taken to account, exceeded those at which respondents re-
sold them. They further say they never took goods to their
own account, unless in case of single bales, without the ex-
press previous sanction and knowledge of the agent of the
complainant, and that sometimes, in fact, they so took goods
to their account against their own wishes and interest, yielding
to the urgent and importunate request of said George Williams,
who desired, for the use of the complainant, occasionally to
have a larger credit with respondents than the state of their
accounts and the course of dealing between them would have
justified unless such goods were so taken to account, and that
when so taken, they were always taken at current prices, and
were sometimes sold at an actual loss.

Further answering, respondents state that the allegation in
the bill, that they sold complainant's goods at any time at less
than their market value, to induce purchasers to buy their own
goods, is utterly untrue. They say that sometimes prices were
limited at a rate higher than the market value, yet, with some
few exceptions, they did not at any time sell under the limit,
and whenever they did so, it never resulted in any loss to the
complainant, and the fact was always made known to said
George Williams, and the sale sanctioned, approved and rati-
fied by him, and in any instance in which they may have
omitted to comply strictly with instructions, they took on them-
selves the risk of loss, and bore it when any in fact occurred;
and they expressly aver that sometimes they charged themselves

in account for goods as sold at certain prices, when in fact they received a less price, and did so uniformly whenever they sold at any price less than the limited price, and objection was made by said George Williams. All these matters were known to and understood by said Williams, and fully sanctioned and approved by him, and they deny that they made sales to themselves at any time, save with the sanction and knowledge, and sometimes at the urgent solicitation, of said Williams, whilst acting as treasurer of the complainant.

They further deny that the accounts by them rendered are unreal or fraudulent, or made for the purpose of concealing from complainant the true and accurate result of their sales. The accounts were correct; sometimes it may have occurred, and most probably did occur, that the precise dates were not accurately given. This may have arisen from taking an average date of sales made in the course of several days, or of a week, or even of several weeks, where the sales may have been sparse, or by inadvertence sales may have been omitted to be entered at the proper time, and afterwards may have been entered as of the date when the error was discovered. They further say that they rendered regular accounts of sales made, and of goods taken to account, and by these accounts the dates from which interest was computed plainly appeared. These accounts were stated according to usage and general custom, and in accordance, moreover, with the known and established course of dealing between the complainant and these respondents, and if there had been any reasonable ground of objection on this score, the objection would have been, as it ought to have been, promptly made by the said George Williams, agent and treasurer as aforesaid.

They further state that all the accounts were honestly and truly rendered, and that it is not true that any such alleged frauds or inaccuracies would appear by the account books of these respondents. No account books were ever kept in which complainant has, or ever had, any interest or property; full and accurate accounts being rendered regularly by respondents to the complainant of all the dealings and transactions between them. They admit that George H. Williams did apply to them

for leave to examine their books with which request they declined to comply, and for the sufficient reason that he had no right to examine their private books, and because they had no book or books in which he or the complainant had any interest or property whatever, and they state that they never kept any such book or such books concerning the business of the complainant as stated in said bill.

Further answering, these respondents say that the complainant, in the accounts regularly rendered by them, has been furnished truly and accurately with the items of account from the 1st of January 1850, of all the dealings and transactions between them in every particular, and as far as they know and believe, the accounts so rendered are correct, although they will not aver that there may not be errors in date, but if such errors there be, they have not the information or means of now correcting them. That they are unable to give any other or further information than the accounts rendered by them furnish and afford; the said accounts were truly stated, and are substantially correct, if not exactly so. These respondents say that, if bound to do so, they can probably state the names and residences of many of the purchasers of goods, but they are advised, as no such requisition was made at the times the accounts were rendered and approved, they are not now bound to take this extra trouble; and they further state that, by the usage and custom of trade, the names or residences of purchasers are never stated in rendering account sales, where the sales are guaranteed. They aver that the prices stated are the true prices at which sales were made, and the credits stated are the true credits at which the same were sold, although there may be instances in which, pending a limit, where persons were unwilling to purchase at so high a price as the limit, the goods were delivered upon the understanding that the same should afterwards be considered as sold at the then market price, when the limit should be taken off, or when the market price should attain the limit, whichever should first happen. They do not remember any case of this kind, nor do they know that there was certainly any such case, but it is possible such instances may have occurred, and hence the qualification

Keighler, *et al.*, *vs.* Savage Manufacturing Co.

here made. They further state it is impossible for them to say whether goods taken to account were sold at a profit or a loss, or to whom sold, or when; with great labor some of the bales could probably be traced, but they are advised that, as all goods taken to account were so taken with the knowledge and concurrence, and generally at the instance of said George Williams, it is of no concern to the complainant in what manner, to whom, when, or at what prices the same may have been disposed of by these respondents. They again deny all fraud and all allegations of fraud, in whatever terms, charged or insinuated in and by the bill, and as to any supposed or pretended mistakes, they say that the several monthly and all other accounts rendered by them were plainly stated, were unambiguous and clearly intelligible, even to the plainest understanding; that the quantities of goods sold, and the quantities on hand, were always distinctly stated; that the dates on which the sales were reported to have been made, were always given, and it was in the power of any one who kept the run of the calendar, to ascertain whether the date was on the Sabbath, and to have pointed out the fact; that the prices at which the sales were made, were always distinctly and accurately stated; that the times of credit were always distinctly and plainly set forth; that the time from which interest was to be allowed, was always plainly stated, and it was, therefore, in the power of the agents and officers of the complainant to have made objection, if any objections existed, as the grounds of such objections were plainly and obviously apparent on the face of said accounts.

To this answer the complainant filed exceptions, both for *impertinency* and *insufficiency*. All of the former were overruled by the court below, and also all of the latter, except the following, which were sustained:

7th. For that they have failed to answer the allegation that, prior to the issuing of said execution, and since the rendition of the judgment, many and large payments on account, by collaterals, had been paid to them, and which were not credited thereon prior to said execution.

8th. For that while in said answer they have admitted their factorship, as alleged in the bill, they have failed and refused to discover and describe the books of account kept by said defendants, in which the accounts of sales of complainant's fabrics are registered, and which, as factors, they were bound to keep, and in which, as the bill states, the frauds which are charged in the bill alone appeared.

9th. For while they admit in their answer that limits as to price were placed on complainant's fabrics so consigned, and that they sometimes sold under said limit, and that said George Williams sanctioned such sales, yet they do not state how often, when, and to what amount such sales under limits were made, nor to whom such sales were made, nor do they say when and to what amount said George Williams sanctioned such sales.

10th. For that while they admit that they sometimes charged themselves with goods at certain prices, when in fact they sometimes received for them less prices, and did so uniformly when such sales were not sanctioned by said George Williams, yet they do not say when, or how many goods, or to what amount, they so took to account, nor their subsequent disposition of them.

11th. For that while they aver that they never made sales to themselves at any time of complainant's goods, save with the sanction and knowledge, and usually at the solicitation of said George Williams, yet they do not state what amount of sales were so made to themselves, nor when, nor to what extent, nor the number of times.

12th. For that while the bill charges that the pretended dates in their accounts of sales are untrue, and not the real dates of sales, and various evasive suppositions are set forth by way of answer thereto, yet they do not say whether they ever made such sales on Sundays or not, nor whether they did or did not render precise dates, nor whether such dates in such accounts correspond with the dates in their books of account, nor whether they believe the said dates to be the true dates of sale.

13th. For that they have failed to answer, and do not give

the names and residence of the purchasers of complainant's goods, as called on by the bill so to do.

The defendants then filed answers to these exceptions, in which they say, in answer to the 7th exception, that after the rendition of said judgment for $10,000, they credited the complainant's account with that sum, and opened a new and separate account in respect of the judgment, leaving the balance of their old account thus reduced under its former head. This was done in accordance with the directions of their counsel, whose letter of instructions, dated 1st of October 1852, herewith filed, marked *X 3,* was *strictly followed. All receipts from collaterals, when and as received, were credited to the complainant, and the residue, after satisfying the balance not embraced in the judgment, was credited upon the judgment. The paper herewith filed, marked X 4,* shows the dates and amounts of the receipts from collaterals in their hands. [This paper does not appear in the record.] They however state, that in point of fact, some of the money was actually in hand (and interest is thereon allowed to the complainant from the time it was so in hand) previous to the date at which it *is* credited, but the same was paid by the trustee under the Mason deed *only on condition that the firms receiving the same would give their notes therefor,* so that such payment was not in fact a credit, or to the use of the complainant, inasmuch as respondents would have had to refund the same by payment of their notes, if the title of the complainant in the pending controversy had been pronounced invalid. In reply to the 8th exception, they say that the statement in their answer in this behalf is true. They have no such books as are supposed in the bill. In answer to the 9th exception, they say they are unable to give more definite answers than are contained in their answer already filed. The accounts from time to time rendered, embrace all such sales, and were and are just and true, and were fully examined, understood and approved. In reply to the 10th exception, they say they are unable to give any further information than is contained in their answer, respecting the matters specified in this exception. To the 11th, they say they are unable to answer more definitely than as set

forth in their answer. The accounts, as rendered, truly and fully embrace all the particulars specified in this exception, although it is now impossible to point out the items. In answer to the 12th, they say that they never made any sales on Sunday, and if any dates in any accounts rendered by them indicate Sundays, then such dates are erroneous. Sometimes average dates may have been taken, and in such cases, if any, the average date may have been inadvertently adopted, without noticing that the same fell on Sunday. They, however, are not aware, nor do they admit, that there were erroneous dates in their accounts, and the statement in this behalf in their answer was merely hypothetical. They believe that the true dates of sales are stated in their accounts as rendered, and that in cases, if any, of average dates, that the average dates are truly and accurately stated. In answer to the 13th exception, they insist, as stated in their answer, that they are not bound to ascertain the names and residences of purchasers, and that it is not now, and was not at the time said accounts were rendered, the custom of Commission Merchants in Baltimore to render the names or residences of purchasers in case of such agencies, although if at the time said accounts were rendered, or within any reasonable time thereafter, the same had been requested, these respondents would promptly and with great pleasure have furnished all desired information. At this period it would be a work of much labor to comply with the demand, even in a partial degree, and it would be now impossible to comply with the same to any considerable extent.

A motion was made by the defendants to dissolve the injunction, and the complainant asked leave to take testimony in support of the allegations of the bill, and a mass of evidence was taken, which need not be stated, inasmuch as the appeal was dismissed by this court, for the reasons stated in their opinion, and no final decision was pronounced on the merits of the case as disclosed by this testimony. The motion to dissolve and the exceptions were heard at the same time, and the court passed an order overruling all the exceptions, save those before stated, which were sustained, and the defendants required to make further answer thereto, and continuing the

Keighler, *et al.*, *vs.* Savage Manufacturing Co.

injunction till final hearing or further order. From this order the defendants appealed.

The cause was argued before LE GRAND, C. J., ECCLESTON and BARTOL, J.

*Wm. Schley* for the appellants:

The bill is based upon the alleged *fraud* of the defendants as factors, and the object is to obtain a *general account* of the dealings between the parties as principal and factors, from the 1st of January 1850 to the 1st of June 1851, being the period of the existence of such relation. The *judgment* is not assailed as having been obtained by fraud, mistake or surprise, but its efficacy is sought to be *controlled* by an alleged agreement, that it was not to operate and have effect as a judgment, but only as a security collateral to an account thereafter to be taken for such sum, if any, as should appear to be due as the result of such account, and the injunction against execution of the judgment is prayed, as *ancillary* relief to the principal relief sought by the bill. Hence, two corollaries follow: 1st, if the complainant is not entitled to an account the injunction should be dissolved. *Accessorium sequitur suum principale.* 4 *Md. Ch. Dec.*, 50, *House vs. House.* 4 *Gill,* 472, *Geiger vs. Green.* And 2nd, if the alleged agreement, that the judgment should only operate and have effect as a provisional judgment, be not sustained by competent proof, the injunction must fall even if the bill be retained as a bill for an account. And the appellants insist, that the appellee is not entitled to an *account.*

1st. Because the appellee has no real interest in the suit and can neither gain or lose by the result, and also because persons are interested in the suit, who are not parties thereto. The answer charges, and the allegation is sustained by the proof, that by some agreement the suit is prosecuted at the individual risk, and for the individual gain and profit of George H. Williams and Nathaniel Williams or one of them, and if this be so, the corporation has no real interest in it, and these persons should be made parties to it: *qui sentire commodum sentire*

*debet et onus.* *Adams Eq.,* 702. *Mitford's Pl.,* 259. 1 *Story's Eq., sec.* 503. The case in 9 *Beavan,* 292, *Clarke vs. Tipping,* is widely different, and there the persons whose beneficial interest was doubtful were made actual parties, and the complainant in that case had in his own right a contingent interest, and had, by derivation of title the interests of two of the creditors.

2nd. The account between the parties having been in fact stated and closed by the complainant's note, the complainant cannot maintain the ordinary bill of account, which lies only where *no* adjustment has taken place. A *settled* account can only be impeached for error or fraud. 1 *Gill,* 350, *Stiles vs. Brown.* If impeached for *error* (without fraud) the complainant is only permitted to surcharge and falsify, and is not entitled to a general account. 1 *Md. Ch. Dec.,* 306, *Williams vs. Savage Manf. Co.* 1 *McN. & Gordon,* 93, *Allfrey vs. Allfrey.* If impeached for fraud, the fraud must be palpable and be clearly proved by undoubted testimony. *Note* to *Macnaghten's Select Cases,* in 74 *Law Lib.,* 97. The rule requires *convincing* proof—no *acquiescence with knowledge,* no unnecessary *delay* after the detection of the fraud in making complaint—no *antecedent neglect* in making proper and necessary examinations of the accounts. 1 *Story's Eq., secs.* 523 to 527.

3rd. The fraud alleged in the bill being flatly denied by the answer, is not sustained by *any proof* which even justifies a *suspicion,* much less maintains the *hypothesis* of *fraud.* The exhibits adduced as specimens of the accounts, are not wrong in any particular, but if wrong they were not rendered during the agency of these appellants. The complainant has possession of the accounts rendered by the defendants, and *not one* is produced or shown to be even *wrong* much less shown to be *fraudulent.* The transactions of the former firm, whose account these appellants satisfied with the sanction of the complainant, cannot be investigated in this suit, as they are not parties. So as to the accounts of the succeeding firm; and for two reasons, *firstly,* because other persons are interested who are not parties, (2 *Gill,* 481, *Hardesty vs. Wilson,*) and sec-

Keighler, *et al., vs.* Savage Manufacturing Co.

*ondly,* because the period covered by this bill is limited to the time, between the 1st of January 1850 and the 1st of June 1851.

4th. Even if it can be assumed, as alleged in the bill, that the accounts show fraud on their face, it would not aid the complainant, as it was clearly a duty to repudiate and reject the accounts at once: *vigilantibus non dormientibus subveniunt leges. 5 Md. Rep.,* 367, *Falls vs. Robinson.*

5th. As to mere *irregularities,* as selling under limits, for instance, these were not necessarily fraudulent, and damages could have been recovered at law for the breach of any such orders. But the accounts on their face disclosed the terms of sale, the prices, the credit, and the quantities sold. By examination of the accounts, these imputed irregularities could have been detected, and in fact the accounts were examined, and all differences in these respects were amicably settled and adjusted.

6th. And as to so much of the note as was made up of the sum paid by the appellants to the former firm, even *fraud* on the part of *that* firm, if any could be shown, could not avail the complainant as against these defendants, because the accounts of that firm cannot be investigated in this suit, and secondly, the sum was paid with the concurrence of the complainant. Upon no ground except the mere *presumption* of fraud, can the complainant have such an account as claimed; and it is not a bill surcharging and falsifying items which resulted in the two settlements mentioned in the evidence. The bill therefore, even on the motion to dissolve ought to be dismissed. 4 *Gill,* 472, *Geiger vs. Green.*

But even if the complainant is entitled to the account asked by the bill, still the injunction ought not to have been continued, because the alleged agreement in regard to the judgment was denied, and has not been proved. And on this point the appellants insist:

1st. No *collateral* judgment was asked for, but a simple ordinary judgment for a specified sum, parcel of a larger acknowledged indebtedness not deemed sufficiently secured by the collaterals held by the creditors, and the object was to

*convert* so much of the debt, so insufficiently secured by the Mason collaterals into a *judgment debt*, and take the amount out of the account. This is the tenor of the correspondence offered in evidence, and is the effect of the judgment itself. It was so understood by the counsel for the creditors, and so understood by the defendants. The evidence of Bradenbaugh only shows that *pending* transactions, not *past* settlements, were to be closed and the collaterals were to be credited. If the intelligent counsel for the company had so understood the transaction, at the time, he could have had it entered *as part of the judgment*, and as Amos A. Williams equally suspected *all parties to the suit*, and as he only desired to have a *point left open* for future controversy, such a paper would have removed, undoubtedly, his strenuous opposition to the judgment. But even if Bradenbaugh's evidence is clear and unambiguous, and even if it were competent evidence, it would not avail to establish the agreement, as against the positive answer of the defendants, whose answer was demanded on oath.

2nd. But the evidence of a parol agreement, even if proved by a score of witnesses, would not avail to vary the effect and operation of the judgment, it being conceded, that such a security was intended to be given as was in fact given. 1 *Pet.*, 1, *Hunt vs. Rousmaniere*. *2 Md. Rep.*, 25, *McElderry vs. Shipley*.

3rd. Besides the technical estoppel by the record, the complainant is barred by an estoppel *in pais*, by reason of the proceedings in Howard county court. The complainant there affirmed (and it enabled the plaintiff in the judgment to overcome the opposition of Amos A. Williams) a state of case utterly inconsistent with the theory of this bill. In attempting to do so the complainant is seeking to perpetrate a fraud upon justice.

4th. Solemn acts of courts of justice are not to be transacted as if mere mockeries. They are not to be used to prevail for one purpose and to be powerless for another. They import absolute verity, and the attributes and incidents annexed to them by law are not to be annulled on mere suggestions of

fraud or error. It must be clearly *proved* and the complainant must be free from blame. 2 *H. & J.*, 179, *Contee vs. Cooke.*  6 *G. & J.*, 312, *Gott vs. Carr.*  7 *Gill*, 190, *Briesch vs. M'Cauley.*  9 *Gill*, 420, *Beard vs. Hubble.* 5 *Md. Rep.*, 367, *Falls vs. Robinson.*

But the objection is now made, that the appeal has not been brought before this court in the manner required by the act of Assembly, and the cases of *Richter vs. Pue*, 9 *G. & J.*, 475, and *Hardesty vs. Wilson*, 2 *Gill*, 481, are relied on.  But independently of the effect of these decisions as binding authority, on general principles it is clear, that the question of the sufficiency of an answer on a motion to dissolve, is a practical one, that is to say, if the bill on its face is without equity, then however imperfect the answer may be, the court will dissolve the injunction, without regard to the insufficiency of the answer.  (3 *Bland.*, 132, 162, 163, *Salmon vs. Clagett.* 5 *Md. Rep.*, 367, *Falls vs. Robinson.*  7 *How.*, 726, *Hardeman vs. Harris.*)  If it meets and displaces the equity of the bill, (where the bill on its face presents a *prima facie case*,) it is enough to justify a dissolution, however short the answer may be as to matters not material to the equity of the bill. 4 *Price*, 339, *Scott vs. Becher.*  13 *Price*, 294, *Bally vs. Kenrick.*  *Wigram on Discovery*, secs. 273, 278, in 13 *Law Lib.*, 197, 198.  How can an answer be insufficient *quoad* the injunction, if the injunction would still be dissolved, if the matters excepted to were not answered?  The court below ought to have dissolved the injunction, because the complainant is not entitled to such an account as is claimed, and the alleged agreement as to the judgment has not been proved. But it is said, the decision of the judge is not open on this appeal, and the case in 2 *Gill*, is relied on as decisive on the point, and I admit the conclusiveness of that decision on this point, that the order sustaining the exceptions is not open *for review* on this appeal; that is, this court on this appeal will neither *affirm* nor *reverse* that part of the order appealed from, which sustains the exceptions, however erroneous the order may be. In the case in 2 *Gill*, the appeal was brought up under the acts of 1832, ch. 197, and 1843, ch. 73, from an order dis-

solving an injunction. The court affirmed the order, and the appellant desired to open, on the appeal, the question as to the propriety of the order in relation to the exceptions, for the purpose of sustaining the appeal. But the plaintiff's right to an injunction did not depend on the question of the sufficiency or insufficiency of *the answer*, but on the case presented by him in his bill, which, so far as not denied by the answer, was assumed to be true. The decision proceeded manifestly on the ground of a total want of equity on the part of the appellant to an injunction. But as in such an appeal no condition is required, that an answer shall be first filed, the only condition being, that the appeal shall be brought up within thirty days, it is manifest that the case is no authority respecting an appeal under the act of 1835, ch. 380. That case was brought up in time, and it was properly before the court for review *only* so far as respected the injunction. If the question of jurisdiction to hear the appeal had depended on the preliminary question of the sufficiency of the answer, it does not follow from any thing said in that case, that the question of sufficiency would not have been *considered*, not for the purpose of *review* of the order respecting the exceptions, but for the purpose of deciding whether this court had or had not jurisdiction of the appeal, from the order dissolving the injunction.

The case in 9 *G. & J.*, 475, was, however, an appeal from an order refusing to dissolve the injunction, and the court dismissed the appeal. The *mere decision*, as no opinion was filed, is no binding authority in any subsequent case not identical in its circumstances. 8 *Md. Rep.*, 387, *Edwards vs. Bruce.* And if the court meant to establish the doctrine contended for by the appellee, it is to be presumed that they would have filed an opinion announcing the important rule sought to be deduced from that case, especially as cases were coming up every term under this act of 1835. The court *may* have decided, that the decision of the court below was conclusive on the appeal from the order continuing the injunction, or, on the other hand, they may have decided that, *in the opinion of this court*, the answer was insufficient, and, therefore, the appeal was before them for review, as the right of appeal

from an order refusing to dissolve, is given *on the condition* that an answer must be first filed; and this court may have further decided, that the matter of the bill not answered, was *material* to the equity on which the injunction was based. On looking at the record in that case it will be found, that whilst the chancellor overruled the exception as to the non-production of a book therein described, yet the exception which was sustained, concerned a matter material to the equity of the bill on which the injunction was based. To assume that this court adopted, as conclusive upon the appellant and upon the Court of Appeals, the decision of the inferior tribunal, would render the beneficial and beneficent provision of the act of 1835 a very precarious protection, and would, in many cases, annul *the right* of appeal. And it is for this court to decide, in all cases, whether an appeal properly lies. 6 *H. & J.*, 302, *Thompson vs. McKim.* 11 *G. & J.*, 137, *Oliver vs. Palmer & Hamilton.* 1 *Md. Ch. Dec.*, 328, *Chesapeake Bank vs. McClellan.* And how can the court decide the question of its jurisdiction, without determining for itself whether an answer has been filed or not? Wherever the question of jurisdiction depends upon the ascertainment of a preliminary fact, the court, which is to decide the point of jurisdiction, must, *for that purpose and to that extent,* consider and decide that preliminary fact—not as in review of the decision of another tribunal, but as original question properly arising for decision on the point of jurisdiction. And it may happen, in a particular case, that an answer is sufficient as respects the injunction, and yet *insufficient* as to the general case presented by the bill.

But the exceptions are really hypercritical. The answers are full and ought to have been satisfactory. The observations of the master of the rolls, in *Jodrell vs. Slaney*, 10 *Beavan*, 229, are applicable to this case. The 7th exception is unfounded. The bill states that the execution issued on the 22nd of March 1853, and was countermanded. The bill was filed on the 30th of January 1854, and the answer states that the defendants had received from collaterals sufficient to pay the balance of the claim and interest, and to leave applicable

to the judgment $1647.07, as of the 15th of February 1854, and the further answer shows, that the receipts from collaterals were credited when and as received. The account therewith filed (X 4) has been lost, *but it was filed*. But the question is immaterial. What matters it whether money had been received before the execution or not? On a motion to quash it might have been material. But that execution was countermanded, and is *functus officio*. The eighth exception was sufficiently answered. The defendants denied that they had any such books, and the denial is repeated in the answer. What more can be required? If you seek discovery from a defendant you must take his answer; and his evidence on a motion for production cannot be questioned. *Adams Eq.*, 14, 17, and *notes*. *Wigram on Discovery*, secs. 273, 278. But if the defendants had, in terms, refused to produce their books, and had acknowledged that in these books there might be more particular information, what right has the complainant to look into these books? It is a new system of discovery, to charge a party with fraud and then ask to look into the private books of that party and take the chances of there finding evidence against him. And above all, *cui bono*, should the defendants produce their books or any books to prove the alleged fraud? The complainant is not entitled to an account as prayed, and manifestly not entitled to the continuance of the injunction, and, therefore, the exception concerns a matter not material to be answered. But again: where you seek discovery on oath you cannot also ask for production of books. You must ask for a schedule, and if the defendant admits he has them, you may move for production; but if he denies that he has them, you cannot contradict his answer and prove it *false* for the purpose of establishing its *insufficiency*. *Adams Eq.*, 14, 17, and *notes*. The other exceptions are in principle the same. They assume, that where accounts have been rendered, they may be called for at any future period in another and more particular form than was originally required. They depend on the same principle as the seventh and eighth exceptions.

But again, in point of practice, the injunction was improperly

issued; for bond ought to have been given in double the amount of the judgment. *Act of* 1826, *ch.* 200, *sec.* 1.   5 *Gill*, 188, *Alexander vs. Ghiselin.*

*Geo. H. Williams* and *Thos. S. Alexander* for the appellee:

1st. The appellee moves to dismiss this appeal, for, that the exceptions to the answer having been ruled good and a further answer required, and the appellants having failed to make such further answer, they are not entitled to appeal under the provisions of the acts of 1835, ch. 346 and 380.   The right to appeal from such an order, was given by these acts *on condition* of "the *answer* of the defendant or defendants being *first filed*," and an answer ruled *insufficient* upon exceptions, is according to chancery practice *as no answer.*   This was the point decided in the case of *Richter vs. Pue,* 9 *G. & J.,* 475, which was argued before a *full court,* and decided without dissent. It is not for *this court* to decide upon the sufficiency of the answer; all that they have to do is to look to the record in order to see whether there is an *answer or not,* and if they find there is no answer, then, according to the acts of Assembly, they have no jurisdiction to entertain the appeal.   And if the court below has decided the answer to be *insufficient,* it is just as effectual to prevent the appeal as if no answer appeared in the record.

2nd. But if the court decide that the appeal is well taken, then it is insisted, that the proper and only subject for revision, is the correctness of that part of the order appealed from which continues the injunction.   No appeal will lie from an order sustaining exceptions to an answer.   Act of 1835, ch. 185.   In the case of *Hardesty vs. Wilson,* 2 *Gill,* 481, it is expressly decided, that on an appeal from an order dissolving the injunction and overruling exceptions to the answer, the exceptions are not before the court.   And the right of the parties to review the order of the court in regard to exceptions, must be mutual and reciprocal.

3rd. But if this court should think the exceptions are now before it for any purpose, it is then insisted, that exceptions for scandal or impertinence are not overruled, by exceptions

taken at the same time for insufficiency. That by the Maryland practice the exceptions are heard together, and at the time of hearing the motion to dissolve, and, are therefore not overruled by the complainant's taking testimony in support of his injunction, to be used at the hearing of the motion to dissolve. 1 *Bland*, 181, *Jones vs. Magill.* *Ibid.*, 353, *Gibson vs. Tilton.* 3 *Bland*, 400, *Price vs. Tyson.* *Ibid.*, 132, 133, *Salmon vs. Clagett.* And that if the rule were, in strictness, otherwise, the appellants have waived their right to take advantage of it, by submitting to answer some of the exceptions, and by arguing the merits of all the exceptions. And in further support of this point, it is insisted, that the exceptions sustained by the court below were well taken. That a defendant submitting to answer must answer fully, is settled in this State by the case of *Warfield vs. Gambrill*, 1 *G. & J.*, 511. The answer must apply to every material averment, and to all the particulars in which discovery may be necessary to the case stated by the plaintiff, and on the hypothesis, that he is entitled to be relieved in that case. The defendant cannot by answer deny the plaintiff's title, and refuse to answer as to facts which may be useful in evidence in support of that title. 1 *Phillips*, 349, *Lancaster vs. Evors.* 3 *Madd. Ch. Rep.*, 71, *Mazzaredo vs. Maitland.* *Ibid.*, 432, *Unsworth vs. Woodcock.* 4 *Madd. Ch. Rep.*, 252, —— *vs. Harrison.* 10 *Beavan*, 225, *Jodrell vs. Slaney.* 3 *Md. Ch. Dec.*, 72, *Mitchell vs. Mitchell.* The point of the seventh exception is, that while the defendants admit they held collaterals on which they have received large sums, they do not state the particulars of those receipts, with reference to times and amounts, which discovery is essential to ascertain whether their account is correct or otherwise. There is an averment, that the dates of these receipts will appear by a certain paper, which paper is not in the record, but there is no averment that these receipts were *after* the execution. They admit receipts of *various* sums, but do not make out, as they should, an account of *every sum* with the day and date of its receipt. As to the *eighth* exception. The defendants were agents for sale of goods consigned to them by the complainant, and, as such,

Keighler, *et al.*, *vs.* Savage Manufacturing Co.

were bound to keep accounts. They are asked to render an account and to discover the original books of account, and entries containing any and every account whatsoever, relating to the sales of these goods. They say they have rendered accounts from time to time. They do not say they have no books containing such accounts as are called for, but only answer that "No account books were ever kept, in which the complainant has or ever had any interest or property," that "they have no such books as are supposed by the bill." Now it is insisted, that if the defendants kept the accounts relating to the goods of the complainant, in the books of account of their general dealings, they have thereby given to complainant such an interest in these books, as entitles us to call for their production. 3 *Merivale*, 43, *Freeman vs. Fairlie*. 1 *Cox*, 277, *Earl of Salisbury vs. Cecil*. 3 *Younge & Coll.*, 659, *Toulmin vs. Copeland.* 9 *Beavan*, 287, *Clarke vs. Tipping*. As factors, they were bound to keep books and to disclose them. They say they have returned honest and accurate accounts, and yet do not disclose books. They admit they have *account books*, and we are entitled to a description of those books in order to their inspection as to original entries. The other exceptions which were sustained, insist on the right of the complainant to full discovery of particulars of dates, prices, quantities and purchasers, of goods sold or otherwise disposed of, the answer admitting the sales and appropriations in the general. We were entitled to the names of the purchasers, so as to bring them up, and by their oaths to falsify the accounts if we could do so. The information to be given in answer to such questions, is such as the defendant can derive from his *books* and *agents*, not simply what is in his own *personal* knowledge. *Adams Eq.*, 12. 3 *Daniel's Ch. Pr.*, 2046 to 2048. Many of the exceptions which were overruled should have been sustained, and if this court is to answer the exceptions at all, it will review the decision below on these also.

4th. Upon the hypothesis, that the only subject for revision is the correctness of that part of the order appealed from which continues the injunction, it is insisted, that the merits of the

discussion are on the bill, answer and testimony, taken in support of the allegations of the bill, and that the rule of judicature in such a case, is rightly stated in *Md. Ch. Pr.*, 86, viz., "that so much of the bill as is not denied by the answer is taken for true, and likewise so much of the answer as is responsive to the bill," and as a consequence, "if any equity is admitted or is not denied, or if any material allegation in the bill remains unanswered in any of its particulars, the injunction will be continued until the final hearing." As proof of the rule, it is submitted, that where the answer is evasive or unconnected, not meeting the averment in the bill, by a direct admission or denial, the charge is to be taken as confessed for the purpose of this hearing. 3 *Bland*, 132, 162, *Salmon vs. Clagett*. *Ibid.*, 445, *The Belona Company's Case*. 7 *Gill*, 196, *Briesch vs. McCauley*.

The case on the merits, in brief, is thus: The company manufactured cotton goods, and the appellants were its sales agents. The appellants being largely in advance and holding in their hands as collaterals, "Mason's notes," and "goods in store," required a judgment as further security. They wanted a judgment for the full amount of their advance. The company insisted on limiting the judgment to $10.000. They say this sum was to be treated as a definitive adjustment and liquidation of so much of the debt. The company says, the judgment was to stand as a security for so much as might be ascertained to be due from one party to the other, and that the confession of judgment did not affect its rights to examine into the correctness of the account. And it is insisted:

1st. That the pleadings and evidence sustain the company's view of the transaction, and especial reliance is placed on the testimony of Bradenbaugh, and on the admissions three times made in the answer, that the judgment was accepted, with notice that George H. Williams, the most active corporator and agent, and attorney, in confessing the judgment, expressed his dissatisfaction with the accounts, and his purpose at a future day to examine into them. We do not ask to *destroy* the judgment, but say, that for all the purposes for which it was

Keighler, *et al.*, *vs.* Savage Manufacturing Co.

rendered, it is as valid now as it ever was; that it is a *collateral* and nothing more, and that the use now attempted to be made of it is against conscience and equity.

2nd. That as there are no exceptions to the sufficiency of the averments of the bill, and no appeal is taken from the order granting the injunction, and the time limited for an appeal from that order is passed, the company is entitled to the benefit of any equity which arises out of the merits of the case, as disclosed by the entire record. *Act of* 1832, *ch.* 302, *sec. 5.*

3rd. That the charges in the bill of classes of errors, and the averment that the company cannot be more specific without an examination of the agents' books, which is denied them, sufficiently answers the objection, that the bill does not affect to surcharge and falsify in particulars. 77 *Law Lib.*, 97, *Macnaghten's Select Cases.*

4th. That the objections of limitations, lapse of time, acquiescence and the like, are met by the averment, that the company has recently discovered the false and fraudulent conduct of the agents and of the accounts rendered. Such objections have place only after the discovery of the fraud. 11 *Clark & Finnelly*, 714, *Charter vs. Trevelyan.* 1 *McN. & Gordon*, 87, *Allfrey vs. Allfrey.* 6 *Hare*, 366, *Wilson vs. Short.* 9 *Beavan*, 287, *Clarke vs. Tipping.* 1 *Johns. Ch. Rep.*, 550, *Barrow, et al., vs. Rhinelander.* 2 *Jones & Latouche*, 422, *Murphy vs. O'Shea.*

5th. It is averred in the bill, that large amounts of goods consigned by the company to the agents, to be sold by them to others, have been returned as sold, when, in truth, they were secretly, without the knowledge and consent of the company, taken on private account of the agents, and by them subsequently sold at great profits; and the agents are required to render a full and particular account in detail, of the goods so taken and of the sales thereof subsequently made. It is admitted, that the goods consigned to be sold were taken by the agents to their private account; that these goods were returned as sold, and that they were subsequently sold by the agents at great profits, which have not been accounted for,

But it is pretended, they were so taken to account with the privity and consent of another agent—the treasurer of the company—and therefore, the discovery sought of particulars is refused. Now it is insisted, that an agent for sale has no right to take goods consigned for sale to his private account, and if he will do so, in violation of his duty, he forfeits all his commissions, and must account for any profits subsequently realized. 1 *Starkie's Rep.*, 113, *White vs. Chapman*, in 2 *Eng. C. L. Rep.*, 319. 3 *Beavan*, 84, *Gillett vs. Peppercorne.* 6 *Hare*, 366, *Wilson vs. Short.* 5 *Bligh.*, 165, *Rothschild vs. Brookman.* 2 *Ves. Jr.*, 317, *Massey vs. Davies.* 4 *How.*, 503, *Michoud vs. Girod.* 2 *Gill*, 99, *Brooke vs. Berry.* 3 *G. & J.*, 311, *Diffenderffer vs. Winder.* 12 *Pick.*, 332, *Dodge vs. Tileson.* That the fraud in the act is, in this case, aggravated by the misrepresentations on the face of the accounts; and that the case of the company being thus made out, all that is averred in regard to privity or consent on the part of the company, is matter in avoidance which the agents were bound to prove. 5 *Bligh.*, 201. It is denied that there is any proof of acquiescence or assent to these improper acts of the sales agents, and that George Williams, who is supposed to have given his consent to these frauds, had any authority to bind the company by such consent. They admit they took goods to their own account, but say it was sanctioned by the company's agent, which amounts to this, that *one agent* may commit a *fraud* provided he can get *another agent* of the same principal to sanction it. And it is further insisted, that the company is entitled to the discovery sought, to assist in the preparation of the case, and the refusal to give the discovery entitles the company to a continuance of the injunction.

6th. The appellee in like manner relies on the several specifications of fraudulent misconduct which are enumerated in the bill, insisting, that in the present state of the record they are virtually confessed, and especially in the confession, that "there may be instances in which, pending a limit," (on the prices at which the goods were sold,) "where persons were unwilling to purchase at so high a price as the limit, the goods were delivered upon the understanding that the same should

be afterwards considered as sold at the then market price, when the limits should be taken off, or when the market price should attain the limit, whichever should first happen." And it is insisted, that on the present hearing, the admission, that such cases may have happened, is to be treated as a confession that they did happen, and that such conduct was grossly fraudulent. And it is further insisted, that the plea of *stated account* is of no avail where the answer admits fraudulent transactions. 1 *Story's Eq.*, sec. 523. *Story's Agency*, secs. 210 to 213.

7th. That the original entries by the agents in their general books of account of sales, or dispositions made by them of the company's goods consigned to them for sale, are entries to which the company have a right of access, and especially as it is confessed, that the accounts rendered are false in several respects, and especially in misrepresenting goods as sold, which are now admitted to have been taken by the agents on their own account; and that on the present hearing it ought to be assumed, that the books if produced will show every fact which it is alleged will be shown by them. See authorities already cited in discussing the *eighth exception.*

8th. That upon the hypothesis of the appellants, that the judgment was a definitive liquidation of indebtedness to the extent of $10.000, it would not prevent an inquiry into the state of account with reference to any indebtedness beyond that sum, nor into the account of receipts and applications of the collaterals, nor the right of the company to apply the avails of the collaterals, beyond the residue of indebtedness correctly ascertained, in reduction of the payment.

9th. That the appellants having failed to render an account of collaterals, realized since the confession of the judgment, on this ground alone the injunction ought to be continued.

10th. That the confession, that the judgment was subject to credits at the time execution was issued, and that interest thereon had been paid up to the 31st of March 1853, for the whole sum recovered, entitles the company to a continuance of the injunction, until all matters in equity shall be adjusted. 2 *H. & J.*, 34, *Lynch vs. Colegate.*

LE GRAND, C. J., delivered the opinion of this court.

The bill filed in this cause has several objects in view, which may be thus stated: first, to enjoin the execution of a judgment in favor of appellants, and against the appellee; second, to procure a full and accurate account, embracing items and dates, of the dealings between the parties, the appellants having been the factors or agents of the appellee, for the sale of goods manufactured by the latter. The bill, in substance, alleges that the judgment sought to be enjoined was confessed by the appellee, not as an acknowledgment, absolutely, of so much indebtedness, but merely as a security for any which might thereafter be ascertained to exist. It also charges the accounts rendered by the appellants to be incorrect; that sales were reported to have been made, and at rates, when none such were made, and at the rates stated; that its agents, the appellants, took, on frequent occasions, to their own account goods, and reported them as *bona fide* sales, to its great loss. It asks for a full account of the dealing of the parties, including certain specifications and details, so that the complainant, when furnished with such information, may be enabled to surcharge and falsify. On this bill the court granted the injunction as prayed. The defendants answered, and the complainant excepted to the answer, both on the ground of impertinency and insufficiency. Testimony was taken, and a motion to dissolve the injunction and the exceptions were heard together. The court continued the injunction, and sustained of complainant's exceptions to the sufficiency of the answer, those numbered in the record 7, 8, 9, 10, 11, 12 and 13. From this action of the court this appeal is taken.

A motion has been made to dismiss the appeal, because of the want of an answer. This motion is founded on the language of the acts of 1835, ch. 346 and 380, which provide that an appeal will not lie from an order granting, or from the refusal to dissolve an injunction, until the defendant has filed his answer, and on the case of *Richter & Wheat vs. Pue & Wife*, 9 *G. & J.*, 475, which determines an insufficient answer to be no answer within the view of the acts of Assembly. It follows, therefore, that if the court below was right in hold-

ing good the exceptions of the complainant, or any of them of material importance, then this appeal must be dismissed. Before alluding to the exceptions, we think it proper to say that we do not agree with the counsel for the appellee, that no appeal would lie until the court below should adjudge the sufficiency of the answer. It is for this court alone to determine when an appeal will lie. *Excrs. of Oliver, vs. Palmer & Hamilton,* 11 *G. & J.,* 137. *Thompson vs. McKim,* 6 *H. & J.,* 302.

To confide the decision of this question to the court of original jurisdiction, would be, in many cases, to deny all review by the appellate tribunal. Besides, the language of the decree in the case of *Richter vs. Pue,* shows plainly that it was the judgment of this court, and not that of the court below, which determined the insufficiency of the answer. It says, that the defendants having *"failed to file sufficient answers to the bill of complaint,"* &c. Not that the court below *had* so decided, but that this court so determined and adjudged, and, therefore, appeal dismissed.

It is a well settled principle of equity jurisprudence, that if a respondent submit to answer, he must answer fully; *Warfield vs. Gambrill,* 1 *G. & J.,* 511; and that "the court expects from every one seeking relief, unreserved frankness; and he who evidently and purposely holds back something, cannot complain if he should find himself regarded with suspicion and distrust, and be refused that to which he may, in truth, be entitled, and under other appearances might have obtained." 3 *Bland,* 132. By the same authority we are assured that whatever it may be in the English courts, "it has long been the practice of this court (chancery) to hear and decide upon the motion to dissolve and the exceptions to the answer at the same time."

These citations are sufficient to show what are the questions before us, and the rules which are to decide them.

In the present condition of the record, it is impossible to state what, in fact, was the answer to the seventh exception. It refers to a paper marked X 4, as showing the dates and amounts of the receipts from collaterals in their hands. There

is no such exhibit in the record, and, of course, this court cannot undertake to decide upon its statements. It may, or not, have furnished a full and complete answer to the exception. All we can do, is to declare that the complainant is entitled to full knowledge of the amount of collaterals in the hands of the defendants, and also what has been received from them, and, indeed, a correct and detailed statement of the condition of such securities. We must hold the exception to have been properly sustained. We are also of opinion that the eighth exception is well founded. The answer to it, to say the least of it, is ambiguous; it refers to books such as are supposed in the bill. It is the duty of the factor to keep books, in which shall be correctly entered the transactions on account of his principal, and the latter is entitled to a correct copy of the entries, including all memoranda connected therewith. The 9th, 10th, 11th, 12th and 13th exceptions were, in our judgment, sufficiently answered. The answers, in substance, declare that the accounts were true in every particular, *"and were fully examined, understood and approved;"* that it is now impossible for the defendants to give the names of the purchasers in every instance; that had the demand been made within a reasonable time, they might have been able to have furnished the information. We think the settlement of accounts, with full knowledge of all the items of which they were composed, without any intimation given that the names of the purchasers would ever be required, is a fact entitled to considerable weight, for although in a case of actual fraud during the life time of the parties, limitations will not bar, (4 *How.*, 561,) yet when parties with complete information adjust their accounts, it would be unreasonable to subject them, or either of them, at any considerable distance of time thereafter, to a demand for names which could have been readily furnished, if required, at the time of accounting, but which, in the lapse of time, if not absolutely impossible, it is very burdensome and expensive to obtain. The obligation of candor is reciprocal. If it were the intention ever to make such a demand, the defendants should have been notified of it at the date of some of the adjustments, or within a reasonable time thereafter. This view,

of course, is based upon the supposition that the conduct of the defendants has been honest and faithful in all things; if, on the contrary, they deceived the complainant by false statements, and by the concealment of material facts, then it is competent to complainant to avail itself of every circumstance which will cast light upon the transactions of its factors.

The case involving large interests, and much time having already elapsed without any really practical result having been accomplished, and understanding it to be the wish of all parties, as announced at the bar, that when the case goes back, that it does so accompanied with the views of this court as to the principles upon which it should be ultimately decided, we will briefly indicate them for the government of the Superior Court.

As to the Judgment.—*Prima facie* it imports verity, and, as to the parties to it, is conclusive, unless mistake or fraud be shown, and the *onus* is on those who impeach it. A judgment is the highest exercise of the judicial power, and, as such, to be interfered with or questioned only with great delicacy and circumspection. Were this not so, our judicature, instead of being a guaranty of stability and certainty, would be worse than a farce; would be a snare and a trap to the confiding. The law regards it as the final adjustment of the matter in dispute, upon which the parties may confidently rely. If, as alleged in this case, the judgment was agreed and understood by the parties to it to be, not·an ascertainment of so much *actual* indebtedness, but only as a *security* for so much as thereafter might be ascertained to be due, then, in such case, it would be a fraud on the part of the appellants to use it for a purpose different from that of the agreement, and a court of equity would enjoin them from doing so. 10 *G. & J.*, 226. But to establish such a proposition in direct conflict with the legal import of the judgment, the evidence should be abundantly full and explicit; so full, indeed, as to leave no doubt on the mind of the court. Unless evidence of this character be adduced, the judgment should be regarded as unimpeached, and remain in full vigor.

In the final decision of this case, the law governing the re-

lation of principal and factor, is to be applied to the dealings of the parties. What that law is—so far as this case is concerned—we shall, as concisely as may be, state.

Its paramount and vital principle is *good faith;* without it the relation of principal and agent cannot exist; and so sedulously is this principle guarded, that all departures from it are esteemed frauds upon the confidence bestowed. Almost any number of cases might be cited to support this declaration, but such a labor would be but an unprofitable employment of time, inasmuch as all that can be usefully noticed, has been in a very clear manner brought together by *Sugden*, in his work on *Vendors and Purchasers*, by *Justice Story*, in his commentaries on *Equity Jurisprudence*, and in the decisions of the Supreme Court of the United States. In these compilations we have, without unnecessary verbiage, the relative duties of principal and agent distinctly defined. There is no discordance between them; but, on the contrary, perfect harmony. In the case of *Brooke, et al., vs. Berry*, 2 *Gill*, 99, the Court of Appeals emphatically recognized and adopted the views of *Justice Story*, contained in his commentaries on *Equity Jurisprudence*, as stated in *section* 315. In the celebrated case of *Michoud, et al., vs. Girod, et al.*, 4 *How.*, *S. C. Rep.*, 503, (a case elaborately argued by counsel, and fully considered in all its bearings by the court,) the views of *Sugden* are fully adopted; and he says, when speaking of agents and trustees other than those who are *only nominally so*, that they "are incapable of purchasing such property (that of their principal) themselves, except under the restraints which will be shortly mentioned. For if persons having a confidential character were permitted to avail themselves of any knowledge acquired in that capacity, they might be induced to conceal their information, and not to exercise it for the benefit of the persons relying upon their integrity. The characters are inconsistent." The Supreme Court, after fortifying this doctrine by the citation of a great number of cases, proceeds to announce as a consequence, that the law "prohibits a party from purchasing on his own account that which his duty or trust requires him to sell on account of another, and from purchasing on account

of another that which he sells on his own account. In effect, he is not allowed to unite the two opposite characters of buyer and seller, because his interests, when he is the seller or buyer on his own account, are directly conflicting with those of the person on whose account he buys or sells." From this it follows that the appellants had not, according to the general principle, the right to purchase the goods of their principal intrusted to them for the purpose of sale to third parties. The exception to this general rule, or, as *Sugden* terms it, "restraint," is thus expressed: "We scarcely need add," say they, "that a purchase by a trustee of his *cestui que trust, sui juris*, provided it is deliberately agreed or understood between them that the relation shall be considered as dissolved, and there is a clear contract ascertained to be such, after a jealous and scrupulous examination of all the circumstances, and it is clear that the *cestui que trust* intended that the trustee should buy, and there is no fraud, no concealment, and no advantage taken by the trustee of information acquired by him as trustee, will be sustained in a court of equity." This extract from the opinion of the court, embraces both its own and the opinion of Sir Edward Sugden. And our late Court of Appeals, in the case already referred to from 2 *Gill*, after regretting that the inhibition was not without limitation, say—quoting the language of Justice Story—"To deal validly with their principals in any cases, *except where there is the most entire good faith, and a full disclosure* of all facts and circumstances, and an absence of all undue influence, advantage, or imposition," is not to be permitted.

According to these doctrines, if the appellants, without the knowledge and assent of their principal, purchased or took to their own account, goods entrusted to them for sale, or, with the knowledge and assent of their principal, purchased its goods, the principal not being fully and thoroughly advertised of every fact and circumstance in the possession of the agents, such sales are invalid. Whether there were any purchases made by the appellants unattended by these *indicia* of perfect good faith, is a proper subject of inquiry for the court to which this cause will be remanded. The record, as it now stands,

53    v. 12.

discloses nothing positive on this head, although it does much in regard to the general course of trade, and from the ordinary turn of things, it is inferred by witnesses and counsel that such purchases as are unauthorized by law, were made. The answers of the appellants declare every thing was done with the full knowledge and approbation of the agent of the appellee. If this should turn out to be so, and that there was a free, full and frank disclosure of every circumstance connected with the transactions, and a total absence of all fraud and concealment, then, if the accounts between the parties be properly stated, we do not perceive how, under the decisions to which we have referred, such sales can be impeached in a court of equity. Whether the accounts are properly stated, is not for us to decide; that is more properly the business of a book-keeper or accountant; all we can do, is to point out the principles on which they should be stated. If the items composing the several accounts rendered, and the interest thereon, be arithmetically and properly averaged, then the result is precisely the same as though the interest had been computed separately on each item from its true date. This is a mathematical fact.

With these views we dismiss the appeal, the injunction remaining until further order of the court.

*Appeal dismissed.*

(Decided July 21st, 1858.)