Union Bank of Maryland *vs.* Ann Poultney and J. M. Ellicott.—1836.

---

The Union Bank of Maryland *vs.* Ann Poultney, adm'x, *d. b. n. c. t. a.* of Thomas Poultney, and John M. Ellicott.—*December,* 1836,

To warrant a court of Chancery in issuing an injunction, strong *prima facie* evidence of the facts on which the complainant's equity rests must be presented to the court to induce its action.

In such a proceeding, the mere oath of a party, as to the existence of a debt, of which he holds in his possession the written evidence, without producing it, should not be regarded by the chancellor as any proof of such debt.

Union Bank of Maryland *vs.* Ann Poultney and J. M. Ellicott.—1836.

Where the existence of a debt depends on a written instrument, of which the complainant is presumed to be in possession, it should be exhibited with the bill or a satisfactory reason assigned for its non-production.

A party holding a prior lien on lands has no right to prevent by injunction a subsequent judgment creditor from enforcing his judgment by execution; as a sale under such execution could not defeat or impair his prior lien; but would leave him at law, and in equity, in the same condition as if such sale had never taken place.

APPEAL from an order of *the court of Chancery*, granting an injunction under the acts of 1835, chs. 346 and 380.

The bill in this cause was filed on the 14th November, 1836, by the appellees, and charged that in the month of May, 1832, a certain co-partnership was formed by *William M. Ellicott* and *Samuel Poultney*, to carry on the business of banking and dealing in money, bullion, exchange, bills, notes, and other evidences of debt, in the *city of Baltimore*, under the style of *Poultney, Ellicott & Co.* That certain persons, to wit: *The Avalon Company, Thomas Ellicott, Samuel Poultney, Philip Poultney,* and trustees of *Samuel Poultney's wife,* in July, 1832, conveyed their real estate to trustees, for the better securing the payment of the debts of the said firm as bankers for the term of five years. Those conveyances were exhibited with said bill; that afterwards the said firm became indebted to the said *John M. Ellicott,* on a certificate of deposite issued by said firm, for money deposited with them, dated on the 4th January, 1834, for the sum of $25,000; that they likewise became indebted to said *Ann Poultney,* as administratrix aforesaid, on a certificate of deposite for $56,112 81, issued by said firm for money deposited with them, as bankers aforesaid; that the said firm individually and collectively have made default in the payment of said certificates, and each of them are due with arrears of interest; that said sums constitute a lien on the said property conveyed in trust, and that complainants are entitled to the aid of this court to enforce an execution of the power of sale, delegated in the said conveyances in trust, and to be paid out of the proceeds of said trust estate—and the bill further charges, that the trustees mentioned in said

conveyances in trust are proceeding to execute the powers reserved to them, and have given the notice to creditors prescribed by said deeds, to exhibit their claims; that the claims of complainants were exhibited, and that a claim due to the *Union Bank of Maryland*, on a certificate of deposite of said firm, No. 1053, dated 4th January, 1834, and payable twelve months after demand, for $25,000, and various other claims were also exhibited by creditors, who acknowledge the validity of the said trust and the proceedings under it; that the said *Union Bank* has obtained judgment against *Thomas Ellicott*, for the said debt of $25,000, so charged on the said trust property and estate, and for which they exhibited their claims to said trustees, and have caused a *fi. fa.* to be issued thereon, and levied upon the said trust property. The bill exhibited a short copy of said judgment, and it also charged a similar transaction in relation to the *Avalon Company*, and that *Thomas Ellicott* and the *Avalon Company* were two of the grantors, who as aforesaid from motives of friendship had assigned their property in trust for securing the debts of the said firm; that the *Bank of Maryland* is also preferring a claim against the said trust property, which claim the said firm denies, and that until the same shall be adjusted, it will be impossible to ascertain the extent of the liabilities of the said firm, which are charged upon the said trust estate; and that a sale under the said executions, or either of them, of said trust property, while the amount of the said incumbrances is so entirely uncertain, would not only operate a most manifest injury to the grantors, *Thomas Ellicott* and the *Avalon Company*, but also to the appellees, and other *cestui que trusts;* that the execution levied upon the said trust estate by one of the *cestui que trusts*, is calculated to thwart, and will obstruct, perplex, and delay the prompt and due execution thereof, and impair and diminish the value of the said trust property, by involving the title in doubts and transferring the possession to a purchaser holding adversely; and the complainants further charge, as their belief, that it is the purpose of the *Union Bank* to surround said trust with

difficulties, and to cloud and render uncertain the value of the same, and to cause the same to be sold under the most disadvantageous circumstances, without regard to the rights of any other party interested in the same, unless prevented and restrained by this court, whose province it is to disembarrass trust estates and enable trustees to proceed with their duties. To the end that complainants and all creditors who might come in should obtain relief—prayer for an injunction and subpœna, against the trustees of said estate, the *Union Bank of Maryland* and *Poultney, Ellicott & Co.* &c. This bill was affirmed to before a justice of the peace in *Pennsylvania,* by *John M. Ellicott,* and certified to by a prothonotary there.

The deeds of trust referred to in the bill, and short copies of the judgments, with the assignment by *Poultney, Ellicott & Co.* of their property in trust for the payment of their engagements, as bankers, were exhibited with the bill; upon which on the 14th November, 1836, the chancellor (*Bland,*) ordered an injunction to issue, by which *The Union Bank* was restrained from further proceedings on the judgments aforesaid, which was accordingly issued. After the coming in of the answers (which are not material to the consideration of the question appealed from,) the *Union Bank* prayed an appeal from the granting of the said injunction.

The cause came on to be argued before STEPHEN, ARCHER, DORSEY, CHAMBERS, and SPENCE, Judges.

KENNEDY, for the appellants, contended:

That the chancellor erred in granting the injunction in the proceedings described.

1. Because it was apparent from the statements contained in the bill, that the *Avalon Company* was indebted to the *Union Bank of Maryland* in the sum of $14,000, for which amount a judgment had been obtained in *Baltimore* county court, and execution of *fieri facias* issued thereon; and that said execution was laid on the property of the said *Avalon Company,* which execution in law, the appellants assert,

gave them as creditors of the *Avalon Company*, a priority over any debt of *Poultney, Ellicott & Co.* which it was the design of the trust deed of the *Avalon Company* to secure.

2. Because it was also apparent on the statements of the bill, and in the exhibit A, accompanying the same, that the *Avalon Company* being an incorporated manufacturing company, had by deed without valuable consideration, and not in any course of business recognized by its charter, conveyed away to trustees to secure the debts of a banking concern with which it had no lawful connection, all its property, consisting of valuable lands, grounds, houses, hereditaments, and real estate. Which deed or conveyance was altogether void and inoperative, contrary to the privileges and powers conferred by the charter, and therefore wholly null and of no effect, or that such conveyance was at least void, as against any creditors of the said *Avalon Company.* On this point he cited the charter of the company, act of 1822, ch. 199. *Providence Ins. Co. vs. Head,* 2 *Cranch. The Trustees of Dartmouth College vs. Woodward,* 4 *Wheat.* 518. *Bank of the United States vs. Dandridge,* 12 *Wheat.* 64. 15 *John.* 358. 5 *Conn.* 560. *The Inhabitants of the first Parish vs. Sutton and Cole,* 3 *Pick.* 232.

3. Because it was also apparent upon the bill, and exhibits therewith, that the said *Thomas Ellicott* was indebted to the *Union Bank of Maryland* on his own account, and that judgments had been rendered against him for such debt, and that he was either unable or unwilling to pay the same, whereby his property became liable for such debt, and was answerable for the same before any debt of *Poultney, Ellicott & Co.* could legally be charged thereon, by virtue of the deed of trust described in said bill; and that so far as regards the creditors of *Thomas Ellicott*, the said deed of trust was fraudulent and void. On this point he cited: *Stat.* 13 *Eliz.* Roberts on Frauds, 12, 22, 27. 2 *Ves. Sr.* 11. 2 *Atk.* 181. *Russel, et al vs. Hammond, et al,* 1 *Atk.* 13. *Methodist Episcopal Church vs. Jacques,* 3 *J. C. R.* 92. *Walker, et al vs. Burrows,* 1 *Atk.* 94.

4. Because the said bill does not show or set forth at what date the certificate of deposite alleged to be held by *Ann Poultney*, as administratrix of *Thomas Poultney*, was issued by *Poultney, Ellicott & Co.* nor when the same was due and payable, nor does it set forth when the certificate alleged to be held by *John M. Ellicott*, was payable, nor does the said bill show at what date the said certificates were refused to be paid. Wherefore the appellants contend, that there being no statement or proof before the chancellor to show that their alleged debts were due before the accruing of the debts of the *Avalon Company,* and of the said *Thomas Ellicott* to the *Union Bank of Maryland*, the chancellor was in error to grant the injunction against either of the said executions, inasmuch as that, the said *Union Bank of Maryland* had at least a priority for their claims against the said parties if such claims existed *previously* to the indebtedness alleged to arise on the said certificates, notwithstanding the deeds of trust. The said deeds of trust being void, as against creditors having claims against the said parties grantors of *elder date* than debts intended to be charged on the trust.

The counsel here went into the consideration of the effect of the *answers* filed in this cause, but as the court decided that the appeal was merely from the *granting* of the injunction and independent of the answers, it is not considered necessary by the reporters to insert the argument of either counsel on that view of the cause.

R. JOHNSON, also for the appellants.

That independent of the acts of 1835, chs. 346 and 380, the appellants in this cause had no right of appeal. The object of those acts was to give to defendants in equity all the rights which the act of 1832, gave to complainants. That act was co-extensive with every grievance of the complainant arising from a refusal to grant or continue an injunction, and the object of the latter laws was to give defendant an appeal to remedy the grievance of awarding or refusing to dissolve an injunction. As the answer is in here,

and as the filing it is one of the conditions of the right of appeal, we call on the court to examine it. The appeal brings up both bill and answer, and the court is to pass such order in the premises as to it shall seem proper. What premises? Those before you, bill and answer. But I propose to examine this cause on the case made by the bill, and

1st. As to the *Avalon Company* :

The charter is before the court, it is recited in the deed and the bill refers you to that. Had the company, as against its own creditor, a right to execute such a deed? The bill admits that the bank under a *fi. fa.* is about to sell the property of the company on an unimpeached judgment exhibited in the cause, and the court is bound to assume that the debt contracted was a debt incurred in the prosecution of the objects of the charter. In point of fact as the answer shows, it originated before July, 1832. It was a renewed accommodation until sued on at law. Looking only to the bill the debt was contracted for the company and with the *Union Bank*, in ignorance of the deeds of 1832.

The controversy is between a creditor of a chartered company, for a debt contracted in the execution of the charter; and a creditor of a private bank claiming a lien on the property of the corporation, as against such creditor. No company can enter into a valid contract to the injury of a *third* person beyond the sphere of its charter. The effect of such a contract on the company itself is a different question. Is it competent for a chartered company by a contract out of the sphere of its charter, to dispose of its funds to the injury of those contracting with it and within its chartered powers? The *Avalon Company* could not have become such a bank as was the firm of *Poultney, Ellicott & Co.* She could derive no benefit from her deed, it was only to take effect upon the default of *Poultney, Ellicott & Co.* and I concede that if she could in anticipation, have transferred her property without consideration to pay the debts of *P. E. & Co.* she may apply the same means in the same way after those debts are due. To all charters there are three parties. The state,

the corporators, that portion of the community who contract on the faith of the charter and are entitled to its faithful execution—and in that view the *Union Bank* has the same rights as if named in the charter, and the company's funds specifically pledged to her for her debt. In inquiries into validity of acts done under a charter we examine the grants of power conferred by it. The statute is the enabling power. Every act which the charter does not authorize the corporation to perform, is as much a nullity as if no corporation existed. It is true as a general rule, that for mere violations of chartered franchises, there is no forfeiture unless on office found, yet any individual for wrong done him in that way is entitled to the whole power of the government to recover his right.

A corporation can prefer creditors—if so, and the creditors of *P. E. & Co.* be creditors of that description, and the deed of 1832 a guarantee to them, then it results that a company may defeat all inquiries into the limitations of its powers—that is the equity of this bill. It denies all right to the *Union Bank*, and takes away the whole funds of the corporation for an object entirely different from the purposes of its creation. Such a deed may operate on the stockholders of a company but not on its creditors, and the parties I know were so advised originally of such results. The company are trustees for creditors, and if no assets the creditors are remediless.

I contend further that this injunction should not have issued until bond had been filed by the complainants—that it is the duty of equity to require bonds in all cases when it foresees that without a bond the party enjoined may be without remedy. Here is a large debt due on judgment from a chartered company, and after execution issued a third party claims to restrain the creditor—after years of delay and litigation the creditor may find the corporation without a dollar. The defendant in the judgment is required to give a bond, why not a stranger who claims to occupy its place. To enjoin a judgment a bond is necessary.

No counsel appeared for the appellees.

DORSEY, Judge, delivered the opinion of the court.

This case comes before us on an appeal from an order of the court of Chancery, granting an injunction to stay the sale of an equitable estate in lands, levied upon under certain writs of *fieri facias,* issued out of the county court. Have the appellees, the complainants, by their bill, shewn themselves entitled to the high and extraordinary power of a court of equity, which has been exerted in their behalf, is the question brought up for revision in this court? We are of opinion that they have not. There is no such evidence of their alleged claims as ought to have been produced to satisfy the conscience of a court of Chancery of their existence. Although they have stated with precision, the number, date, amount, and time of payment of a certificate of *Poultney, Ellicott & Co.* held by the appellant, *the Union Bank of Maryland,* yet, when describing their own certificates, of which it is to be presumed they had superior means of knowledge, as to *Ann Poultney's* certificate, they give neither number, date, nor time of payment, and as to *John M. Ellicott's,* the date is given, but without the number or time of payment. Such omissions of themselves had a tendency to awaken suspicions as to the correctness of these claims. To warrant a court of Chancery in issuing an injunction, strong *prima facie* evidence of the facts on which the complainants' equity rests, must be presented to the court, to induce its action. In such a proceeding, the mere oath of the party as to the existence of a debt, of which he holds in his possession the written evidence, and makes no exhibition thereof, should not be regarded by the chancellor as any proof of the debt. Where the existence of the debt depends on a written instrument, whereof the complainant is presumed to be possessed, it should be exhibited with the bill, or a satisfactory reason assigned for its non-production. Upon this ground therefore, if all others were wanting, we think the order of the chancellor appealed from ought to be reversed. But there is another ground which strikes more directly at the root of this order, and would be fatal to it, no matter what exhibits had authen-

ticated the claims of the appellees. They, according to their own shewing, claim as creditors having a priority of lien on lands conveyed to trustees for their security; and that the executions which they sought by injunction to arrest, issued on judgments subordinate to their prior liens, and operating at most, if their rights be established, only on the equitable estate remaining in the grantors to their trustees, and which grantors were the defendants in the suits in which the executions in question were issued. A sale under such executions, therefore, could by no possibility defeat, or impair the prior liens of the appellees, but left them both at law and in equity, in the same condition, as if no such sale had ever taken place. There was then, no foundation for issuing an injunction at the instance of the appellees for the protection of their rights. If such a proceeding were sanctioned in this case, it would follow, that in no case where the mortgagee or person entitled to the prior lien, saw fit to oppose it in equity, could an equitable real estate be sold under a *fi. fa.* in the teeth of the act of assembly of 1810, *ch.* 160, expressly authorizing such sale. To concede such a power to the court of Chancery, would in effect authorize it to nullify acts of the legislature almost at pleasure.

Believing that the injunction in this case improvidently issued from the Chancery court, the order appealed from is reversed with costs.

ORDER REVERSED.