## The Canton Company of Baltimore *vs.* The Northern Central Railway Company.

A Motion to Dismiss an Appeal from an order granting an injunction, based on the fact of exceptions for insufficiency having been taken to the defendant's answer, will not be allowed to prevail, when all the averments of the bill, to which the Court can look in determining whether such a case is presented as entitles the complainant to the relief sought, and on which the affirmance or reversal of the order granting the injunction depends, are fully answered or denied.

Contracts, Specific Performance of.—The C. Co. of B. on the 24th of February 1853, proposed, by letter, to grant in fee to the S. R. Co. certain lands and right of way, upon certain specified conditions to be complied with by the latter. To this proposition the S. R. Co., by its President, on the 13th of August 1853, replied as follows: "By resolution of the Board of Directors of this company, passed at a meeting held yesterday, I am instructed to accept the proposition made by you to this company on behalf of the C. Co. of B., under date of the 25th February last; and I beg therefore to state my readiness to concur with you in such steps as may be necessary to give effect to the arrangement. If you will have the kindness to have prepared the proper conveyance on the part of the C. Co., and the proper obligation on the part of this company, I will submit them to the counsel of the company for his approval, and then execute them so far as to me may belong." On a bill in equity for a specific performance, Held:

That these two letters do not constitute a contract so far defined, certain and mutual, as to justify a Court of Equity in passing a decree for its specific performance.

Injunction.—An application for an injunction goes to the sound conscience of the Court, acting upon all the circumstances of each particular case; and the Court, having the right to require a full and candid disclosure of all the facts, may refuse to exercise its extraordinary power by writ of injunction, if the proceedings are such as to show that a full disclosure has not been made.

Appeal from the Circuit Court of Baltimore City :

This is an appeal from an order of the Circuit Court of Baltimore City, granting an injunction, passed on the 29th day of April 1863, for the purpose of restraining the appellant from further prosecuting two suits at law, instituted by it against the appellee in the Superior Court of Baltimore City, and then pending before a referee to whom the same had been referred under a rule of said Court, one

of said actions being an *ejectment*, and the other *trespass quare clausum fregit.*

The material allegations of the bill of complaint are set forth in the opinion of this Court. The prayer of the bill was for a conveyance of the lands referred to, and a specific performance of the contract alleged in the bill, and that the Canton Company be forever enjoined from prosecuting the aforesaid suits at law, and for further relief.

The following are the complainant's exhibits Nos. 1 and 2, filed with the bill: .

*Complainant's Exhibit No.* 1.—The Canton Company of Baltimore propose to grant in fee to the Susquehanna Rail Road Company, on condition that said company extends its road to the harbor on the Canton grounds, the following property, to wit:

1st. Free right of way through the grounds of said company to the water, one hundred feet wide, occupying some twenty-five acres, at, say $2,000 per acre:    -    $50,000

2nd. A piece of ground two hundred feet wide, extending from Clinton street to the Port Warden's line, say eight hundred feet at $100 per foot,    -    -    -    -    20,000

Cost of wharf on same, say,    -    -    10,000

3rd. One thousand feet of water-front east of the light house, extending from 10th Avenue to the Port Warden's line, covering an area of thirty acres more or less, $20 per foot,    -    -    20,000

$100,000

This property said company proposes to deed free of any charge, on the above condition, to wit: that said road is extended to said property and occupies it for the business of the road.

(Signed:)—J. H. CARTER,
on behalf of the Canton Company of Baltimore.
*February 24th,* 1853.

Canton Co. of Balt. *vs.* Nor. Cent. R. R. Co.

*Complainant's Exhibit No. 2.*

OFFICE OF THE BALTO. & SUSQA. R. R. Co.,

*Baltimore,* 13*th August* 1853.

JAMES H. CARTER, ESQ.,

On behalf of the Canton Company of Baltimore.

DEAR SIR:—By resolution of the board of directors of this company, passed at a meeting held yesterday, I am instructed to accept the proposition made by you, to this company, on behalf of the Canton Company of Baltimore, under date of the 25th February last; and I beg therefore to state my readiness to concur with you in such steps as may be necessary to give effect to the arrangement.

If you will have the kindness to have prepared the proper conveyance on the part of the Canton Company, and the proper obligation on the part of this company, I will submit them to the counsel of the company for his approval, and then execute them so far as to me may belong. I am sir, very respectfully, your humble servant.

ROBERT CLINTON WRIGHT, *President.*

Upon the bill and exhibits, the Court (KREBS, J.) on the 29th of April 1863, ordered an injunction, which was accordingly issued. And on the 5th day of May following, the defendant filed its answer, and took this appeal from the order granting the injunction. The complainant filed exceptions to the defendant's answer for insufficiency, and moved for a dismissal of the appeal, on the ground that the defendant could not appeal without first filing an answer, and that an insufficient answer was no answer at all. The motion to dismiss, and the appeal, were heard at the same time in this Court.

The cause was argued before BARTOL, GOLDSBOROUGH and COCHRAN, J.

*F. W. Brune* and *George Wm. Brown,* for the appellants :

1st. On the question of the right of exception to the an-

49    v. 21

.386 MARYLAND REPORTS.

Canton Co. of Balt. vs. Nor. Cent. R. R. Co.

·swer of the Canton Company, we refer to Art. 26, sec. 103, of the Code. *Winchester vs. Balto. & Sus. R. R. Co.*, 4 *Md. Rep.*, 232. *Taggart vs. Boldin*, 10 *Md. Rep.*, 104. *Boldin vs. Mayor & C. C. of Balto.*, 15 *Md. Rep.*, 18. The answer in this case is not in evidence. This is not a motion to dissolve. The Court cannot here look at the answer, and we have no right to read it; its only purpose is to join issue, as a plea, and in that light it is sufficient. *Union Bank of Georgetown vs. Creary*, 5 *Peters*, 111, cited by ECCLESTON, J., in 15 *Md. Rep. Bartlett vs. Gale*, 4 *Paige*, 504.

2nd. The appellant contends that a bill for a specific performance of a contract, like that for an injunction, is an application addressed to the sound discretion of the Court, and will be refused unless the agreement sought to be executed is defined and certain in all its parts, fair, just and equal, and proved as the law requires; and also mutual, so that if one of the parties is not bound or not able to perform his part of the contract, he cannot call upon the Court to compel a performance by the opposite party. *Oliver vs. Palmer*, 11 *G. & J.*, 446. *Geiger vs. Green*, 4 *Gill*, 475, 478. *Tyson vs. Watts*, 7 *Gill*, 154. *Mundorf vs. Kilborn*, 4 *Md. Rep.*, 459. *Stoddard vs. Bowie*, 5 *Md. Rep.*, 18. *Rider vs. Gray*, 10 *Md. Rep.*, 285 to 293, 298. *Beard vs. Linthicum*, 1 *Md. Ch. Dec.*, 345. *Duvall vs. Myers*, 2 *Md. Ch. Dec.*, 401. *Allen vs. Burke, Id.*, 534. *Philpot vs. Ellicott*, 4 *Md. Ch. Dec.*, 273. *Stoddart vs. Tuck, Id.*, 475. *State vs. Jarrett*, 17 *Md. Rep.*, 339. *South Wales R. W. Co., vs. Withers*, 3 *Eng. Law & Eq. Rep.*, 226. *Boone vs. Mo. Iron Co.*, 17 *How.*, 343. 2 *Story's Eq.*, sec. 726. So a party not bound by an agreement cannot call upon a Court to enforce performance against another contracting party by expressing a willingness to perform his part of the agreement. *Duvall vs. Myers*, 2 *Md. Ch. Dec.*, 401. And in order to take a case out of the Statute of Frauds on the ground of part performance, the complainant must make out by clear and satisfactory proof, the existence of the contract as laid in the bill, and the act of part perform-

ance must be of the identical contract set up by him. *Owings vs. Baldwin*, 1 *Md. Ch. Dec.* 120. *Beard vs. Linthicum, Id.,* 345. *Duvall vs. Myers,* 2 *Id.,* 401. *Mundorff vs. Kilbourn,* 4 *Md. Rep.,* 461.

The appellant therefore contends, that the contract alleged in the bill to have been made between the Susquehanna Rail Road Company and the appellant, should not be enforced, because:

1st. The contract which was only authorized by the Act of 1853, ch. 191, was made dependent upon the assent of the city, and this assent, although given by Ordinance of 20th June 1854, was, with the express *proviso*, that the grades of all streets through which the lateral railroad should pass, should be established by the city surveyor and commissioner, and the laying of the tracks through the streets of the city should be under the supervision of the Mayor and city commissioner, while the bill does not allege that this *proviso* was complied with, in regard to the track laid down by the appellee, so as to entitle it to the benefit of said contract.

2d. Because the appellee's Exhibits Nos. 1 and 2 do not exhibit a contract as claimed in the bill, which equity can enforce. No 1 was merely the commencement of a correspondence with a view to a future contract, and certainly a Court of Equity could not enforce any obligation contained in No. 2.

3rd. That the correspondence contained in the exhibits does not shew a perfect and complete contract, mutually binding on the parties and capable of being enforced against each other in equity; but, on the contrary, the contract therein proposed, is in the last of said letters left open for final adjustment and ratification, which never took place between said parties.

4th. That if said contract must be considered established, certain fair and mutual, yet it was not performed or even begun by the Susquehanna Rail Road Company, and is not

now sought to be enforced by said company, and cannot be by any other party.

5th. That said contract cannot be enforced by the appellee, because it was not duly adopted and assumed by the appellee as required by its charter, nor could it be validly adopted and assumed without the agreement and consent of the appellant, which was never given.

6th. That if any contract existed as alleged, it was in writing, and being for an interest in, or concerning land, cannot be transferred to the appellee without a new contract in writing, duly made between the appellant and appellee, which is not pretended.

7th. That if there was a valid contract made, and the appellee became entitled by substitution to all the rights of the Susquehanna Rail Road Company, with whom it was made, yet the appellee has, by the terms of the contract, forfeited all its rights under said contract, by gross *laches* and failure to perform its part of the contract. *Crofton vs. Ormsly,* 2 *Sch. & Lef.,* 602.

8th. That by the tenor of the correspondence contained in Exhibits Nos. 1 to 10, inclusive, from which alone the contract, if any was made, can be derived, time is made of the essence of the contract, and upon the failure of the appellee to begin and complete the road at a definite period, such as was prescribed by the contract, the appellant was entitled to withdraw from such contract, which it did by the letter of the 19th of March 1859. Exhibit No. 11.

9th. And even if no definite time was fixed, as the appellant contends, a reasonable time will be prescribed by law, and the appellee having failed to perform within a reasonable time its part of the alleged contract, the appellant was authorised to withdraw therefrom, as it did by its letter of the 19th of March 1859.

10th. That the bill relies alone upon the right of the appellee to enforce a specific contract for a water lot and road bed, and if there is no such contract, or the appellee cannot enforce it, the bill and injunction must fail, and

DECEMBER TERM 1863. 389

Canton Co. of Balt. vs. Nor. Cent. R. R. Co.

cannot be sustained upon the theory of a license, (if there should be any foundation for such theory in the case, which the appellant denies,) in lieu of such contract, because no such license is alleged, and because any right to the appellee under such license, must depend upon the performance by the appellee of all the terms and conditions of the alleged contract between the appellant and the Susquehanna Rail Road Company, as a condition precedent to any right under such license, and which terms and conditions the appellee has utterly failed to perform.

11th. That it is still more fatal to the appellee's case to rely upon a license from the appellant, if it were possible for it to do so under this bill, inasmuch as on such a license no contract could be founded mutually binding on both parties, and capable of being enforced in a Court of Equity against the appellee as well as appellant.

12th. The letter of Mr. Pleasants, the appellant's President, of May 10th, 1856, even if it can be relied on as evidence of an agreement to grant a right of way on the part of the appellant, which is denied, certainly does not contain any evidence of an agreement in regard to the water lot, or the obligations of the appellee to make a lateral railroad of six miles from the main stem of the appellee's road to tide water.

(The argument on the effect of the reference to arbitration is omitted, as this point was not passed on by the Court.)

*Thos. S. Alexander* and *J. M. Campbell*, for the appellee:

I. On the motion to dismiss:

We have excepted to the answer of the appellant for a number of reasons, as insufficient. An insufficient answer is no answer, and without an answer no appeal will lie. *Porter vs. Timanus, et al.*, 12 *Md. Rep.*, 283.

The appellants say that exceptions do not lie to the answer of a corporation, referring to *Barb. Ch. Pr.*, 176. But we answer, that on motions to dissolve injunction,

corporations, as to their answers, stand on the same footing with individuals. *Bolden vs. Mayor & City Council of Balto.*, 15 *Md. Rep.*, 18.   *Code, Art.* 16, *sec.* 103.

The answer is by the very man who constructed the lateral road, sworn to by him as president of the Canton Company, and better able to answer the several averments referred to in the exceptions, than any other.

II. On the merits of the question:

1st. Upon the facts set out by the bill, the Railway Company has an equitable title to both the bed of its road, and the wharf and water lot at its tidewater terminus. This title can only be protected in equity, it not being recognizable at law. The Canton Company is consequently taking advantage of its legal title, to recover land and damages from a party for whom it is, in point of fact, a trustee.

Exhibits Nos. 1 and 2, are a proposition, and its acceptance, and the two constitute a contract between the companies, in writing, which is recognized by the Canton Company in Exhibit No. 3. The contract so made contained no limitation of time in which the work was to be begun or concluded. A desire was, subsequently, to wit, in October 1853, expressed, that the commencement should take place by the 1st April 1854, and the conclusion reached by the 1st July 1855, but it was not made a condition, and all that was said in regard to it was, that if not, the Canton Company might deem it expedient to withdraw its proposition. (Exhibits Nos. 4 and 5.) The work was not begun till after the time so suggested for its conclusion. It was commenced in 1856, and ended in 1857. So far as time was concerned, therefore, the only mention thereof being in Exhibits 4 and 5, there was clearly a waiver on the part of the Canton Company, not only by permitting the work to go on after the lapse of the time named, but also by its failure to make any withdrawal of its proposition before the commencement or conclusion of the work.

This contract, made with the Baltimore and Susquehanna Railway Company, was adopted by the Northern Central

DECEMBER TERM 1863.    391

Canton Co. of Balt. vs. Nor. Cent. R. R. Co.

Railway Company, when it undertook to carry it out, and to such adoption by acts *in pais,* the Canton Company assented. The assent of the latter was shown, not merely by Mr. Pleasants' letter of 10th March 1856, (Exhibit No. 4,) but by the entry of the Railway Company into and upon the Canton Company's lands and wharf, with the knowledge and consent of the Canton Company, which also participated in the work by assisting in the settlement of the route and grade, and whose president, Mr. Pleasants, was one of the contractors. No more was necessary to constitute a contract by the adoption on the one side, and a recognition of that adoption on the other. *Union Bank vs. Ridgely,* 1 *H. & G.,* 324.

Upon the ground of contract, therefore, in writing, between the two companies, the Railway Company was clearly invested with an equitable title to the bed of its road, and the wharf at its terminus, and is entitled to call for a conveyance of the legal estate. Till that conveyance is made, the Canton Company holds the legal title to the road bed in trust for the Railway Company, and the unconscientious use or abuse of that legal title to the institution of suits, against the party which stands to it in the relation of *cestui que trust,* will be restrained by injunction. *Powell vs. Thomas,* 6 *Hare,* 300, (31 *Eng. Ch.,* 300.) 2 *Story's Eq.,* secs. 872, 882, 886, 904, &c. *Drury on Injunctions,* 48 to 52, (36 *L. L.*) *Waterworks Case,* 2 *Eq. Ca. Ab.,* 521. *Short vs. Taylor, Id.,* 522. *Williams vs. Earl of Jersey,* 1 *Craig & Phil.,* 91. *Ches. & O. Can. Co. vs. Young,* 3 *Md. Rep.,* 490.

2nd. But specific performance may be claimed upon the ground of possession given and taken for a purpose, defined by the use to which the possession was put and also defined by such possession, as to the quantity and bounds of the land, added to which is the expenditure thereon of $200,000 by the railway company. If all the correspondence be thrown out as not amounting to a contract, possession given and taken for a specified purpose, and carried

out by an enormous expenditure, furnishes abundant reason for presuming a contract between the parties, and establishes, as between them, the same relation that would have flowed from a contract in writing, and such contract will be equally enforced by equity, and protected by injunction. The temporary non-user of a part of the track, is sufficiently explained by the railway company's embarrassments, in its progress outside the Canton Company's land, which have now ceased. *Drury on Injunctions,* 38, (36 *Law Lib.*)

3. Independently however of any express or implied contract, there can be no doubt whatever that the entry on the Canton Company's lands and wharf, and the construction thereon of the Railway Company's works, with the knowledge, acquiescence and participation of the Canton Company, all which are charged, amounts to a license on the part of the Canton Company. It is not pretended that such license was ever countermanded until 19th March 1859, (Exhibit No. 11,) when, and after all, the work had been done. Such license, so executed at great cost, gives the licensee the right to come into equity and claim its protection, both in its present and future enjoyment of the work which it was so licensed to execute. *Rerick vs. Kern,* 14 *Serg. & Rawle,* 267. *Addison vs. Hack,* 2 *Gill,* 228, and cases there referred to.

CochRAN, J., delivered the opinion of this Court:

This appeal was taken from an order granting an injunction to restrain the appellant from prosecuting two actions at law, one in *ejectment,* and the other for *trespass quare clausum fregit,* brought in the Superior Court for Baltimore City, which, by an agreement of the parties to refer, were then pending before a referee.

A motion was made to dismiss the appeal, on the ground of alleged defects in the appellant's answer to the bill of complaint. It was suggested, in the argument of this motion, that exceptions could not be taken to the answer of a

# DECEMBER TERM 1863. 393

Canton Co. of Balt. *vs.* Nor. Cent. R. R. Co.

corporation, and that the motion should be overruled for that reason. We think it unnecessary however to decide that question, as we have concluded from an examination of the answer, and especially of the particulars in which it is alleged to be defective, that the objections made to it are not well founded. The case differs essentially from that of *Keighler vs. Sav. Man. Co.*, in 12 *Md. Rep.* There, Keighler and his co-defendants were factors, pressing their principal for the payment of a judgment, which was resisted by a bill for an injunction, in which the principal alleged, that they had received payments from collaterals, for which no credit was allowed; that they had rendered imperfect and false accounts, and that their books, in which the accounts of their factorship were kept, were inaccurate and fraudulent in particulars which the complainant could not specify, because the same were retained in their possession, and access of the complainant thereto refused. The prayer of the bill was, that they should produce all the books, containing entries relating to the business and goods of the complainant, and that they should make full discovery, and proper statements of the accounts. The answer was excepted to, because no sufficient discovery was made, and as the equities of the complainant were dependent on the discovery sought by the bill, the exceptions were properly sustained, and the appeal dismissed. The purpose of the bill in this case, was to obtain a decree for the specific performance of an alleged contract, and we find that all the averments to which we can look, in determining whether such a case is presented, as entitles the appellee to the relief sought, and on which the affirmance or reversal of the order granting the injunction depends, are fully answered or denied. Had the answer been more explicit and full, in the particulars objected to, it could have added nothing to the complainant's equities, nor could the matters charged, to which the answer does not explicitly respond, if admitted, have any effect, so far as we can discover, on the determination of the real question presented

50 . 21

394 MARYLAND REPORTS.

Canton Co. of Balt. vs. Nor. Cent. R. R. Co.

by the material averments of the bill. We think the answer puts in issue all the allegations upon which the appellee's right to relief depends, and we therefore overrule the motion to dismiss.

In proceeding to determine the question, whether the injunction was properly granted, we are first to consider whether the contract alleged in the bill, is such as a Court of Equity will enforce by a decree for specific performance.

The Northern Central Railway Company, the present appellee, was created in 1854, by the consolidation of several railway corporations, one of which was the Baltimore & Susquehanna Railway Company, and by the Act authorising the consolidation, the appellee was clothed with the corporate powers and privileges, and also became liable to the burdens, and entitled to the benefits of the existing contracts of that company. It also appears, that the Baltimore & Susquehanna Railway Company was authorised by the Act of 1853, ch. 191, upon obtaining the assent of the Mayor & City Council of Baltimore, to construct a lateral branch of its road from any point on the main stem to the water line of the northwest branch of the Patapsco River, east of Jones' Falls. The bill, after stating that the assent of the Mayor & City Council had been obtained, alleges, that on the 25th day of February 1853, the Canton Company, the present appellant, proposed to the Baltimore & Susquehanna Railway Company, in writing, to grant for said lateral road, free of charge, the necessary right of way, (and other things, including land, water lots and water rights,) through and upon its lands, which proposal was accepted on the 13th of August 1853. These communications, appearing in the record as Complainant's Exhibits Nos. 1 & 2, constitute the alleged contract, the specific performance of which is sought by the bill. The other exhibits, from No. 3 to 12 inclusive, also filed by the appellee, show the subsequent correspondence of the parties in relation to the same subject matter. The bill further alleges, that the appellant had brought two suits at

law, one to recover damages from the appellee for entering upon and making a section of its lateral road through the appellant's lands, and the other to eject the appellee from a lot of ground at the river terminus of the road, which suits, the appellant was then pressing to trial before a referee, to whom they had been referred under rule of Court. The appellant, insisting that it was competent for the referee to award upon and decide all matters in dispute, according to the equity and justice thereof, raised a question as to the right of the appellee to appeal to a Court of Equity for relief, after consenting to the rule for a reference of these cases. Under some circumstances, this proposition might require special attention, but in our view of the case, the determination of that question cannot affect the result, and we shall therefore express no opinion upon it.

The appellee must be considered as clothed with all the corporate rights and privileges of the Baltimore & Susquehanna Rail Road Company, and also as entitled to the benefit of its contracts. Looking then to the communications between the appellant and that company, shown by Exhibits Nos. 1 and 2, we have to inquire, whether they constitute a contract, so far defined, certain and mutual, as to justify a Court of Equity in passing a decree for its specific performance. We are all of opinion that they do not. The first of these communications dated February 25th, 1853, is a proposal, made by the appellant in general terms, to grant to that company a lot of ground two hundred feet wide, extending from Clinton street to the Port Warden's line; a lot of ground east of the light house, fronting one thousand feet on the water line of the river and extending from 10th Avenue to the Port Warden's line, and a free right of way for a railroad through the appellant's lands to the lots aforesaid; on condition, that the Railroad company should extend a lateral branch road to said lots, and occupy and use them for its business purposes. The company replied on the 13th of August 1853,

that it accepted the appellant's offer, stating its readiness to concur in such steps as might be necessary to give effect to the arrangement, and suggesting that a conveyance should be prepared, as well as a proper obligation to be executed on its own part. In view of the very important purpose, shown by these exhibits to have been mutually contemplated, it would seem almost impossible to suppose that this general offer and acceptance were intended to be absolute and binding on either side, or that they were taken and considered as reciprocal stipulations of a complete and consummated contract. The general terms of the offer, as well as of the acceptance, show beyond all controversy, that both sides contemplated something further as necessary to be done, in the way of ascertaining the subordinate details and conditions, essential and incident to the main subject matter of the proposed contract. The proposal of the appellant was unquestionably so regarded by the railroad company, for in accepting the offer it assumed that other steps were necessary to make it effective, and further, that an obligation to be excuted on its own part, was required to perfect the contract proposed.

We think it clearly appears that the appellant's offer, as made and accepted, was considered by neither party as definite or final, and indeed they could not have done so, for it was impossible, by the terms of the offer, to locate, with any degree of certainty, either of the lots mentioned in it. The Port Warden's line runs nearly parallel with Clinton street and 10th Avenue, but where, between the lines thus designated, the lots were to be located, does not appear. The offer did not indicate the route of the road "for which the right of way was to be granted, nor was there any reference to the time to be allowed for the construction of the road, depots and wharves, and in fact, all the details and conditions involved in the execution of the mutual purpose indicated by these exhibits, and necessary to the certainty and mutuality of such a contract as the bill alleges, are wholly omitted. The construction of the lateral road

was undoubtedly a matter of interest to the appellant, but it is scarcely credible that it intended, without anything further, to be bound as a contracting party by the indefinite and general terms of its offer to the Railroad Company. Although these exhibits are evidence of a general concur-rent purpose of the parties to effect an arrangement by which the branch road could be constructed through the appellant's lands, yet we think they do not show a clear, definite, and binding contract. The offer seems to us to have been made and accepted, not in the sense of positive binding stipulations, from which neither party could re-cede, but as the mere basis for such negotiations as should be found necessary to the consummation of a contract, mu-tual and certain in all its parts. This view of the unde-fined and inchoate character of the understanding of the parties, as gathered from these exhibits, is supported throughout by their subsequent correspondence, appearing in the other exhibits filed with the bill.

The appellee, however, alleges and contends, that it has so far performed the contract set up by the bill, with the knowledge and consent of the appellant, as to take it out of the Statute of Frauds, and free it from all objections on the ground of uncertainty and want of mutuality. A brief review of this proposition is necessary. When the Act of 1853, chap. 191, was passed, we find that the Baltimore & Susquehanna Railroad Company had constructed the whole line of road proposed by its charter, and that by the Act referred to, power was given to it to extend its road, by a lateral branch, to the northwest branch of the Patapsco River, east of Jones' Falls, upon the express condition, however, that the assent of the Mayor & City Council of Baltimore should be obtained before any portion of said lateral branch road should be made within the limits of the city. The corporate powers of the Baltimore & Susque-hanna Railroad Company, and of the appellee, as its suc-cessor, to make the lateral road as alleged in the bill, thus appears to have been a conditional one, dependent entirely

on the assent of the Mayor & City Council; and it is also. certain, that the assent required could be given in no other way than by the passage of an ordinance to that effect. We may here observe, that the bill, after setting forth the power and authority thus conferred, alleges generally that the assent of the Mayor & City Council was duly obtained, but there is no averment that the extension of the road was made in conformity therewith, nor is there any as to the time, where, nor of the manner in which the assent was given, nor does the bill state whether the assent was unqualified and absolute, or coupled with conditions necessary to be observed in extending the road. The bill is silent on all these points, and, under the circumstances, the question as to the sufficiency of the averment, that the assent of the Mayor & City Council was duly obtained, becomes an important one. It must be remembered, that the application for an injunction goes to the sound conscience of the Court, acting upon all the circumstances of each particular case, and that the Court, having the right to require a full and cordial disclosure of all the facts, may refuse to exercise its extraordinary power by writ of injunction, if the proceedings are such as to show that a full disclosure has not been made. Here, the assent of the Mayor & City Council was a material fact in the appellees case, and it should have been so alleged as to satisfy the Court of its real character and effect. But that the appellee has not done; the ordinance showing what the action of the Mayor & City Council was, is neither set forth in substance, produced, nor referred to in the bill; the actual character and effect of the assent given being thus left in the field of uncertain conjecture. It is no reply to say, that the ordinances of the Mayor & City Council so far partake of the character of public laws that the Court may take judicial notice of them, for even on that questionable assumption, a reference, to the ordinance relating to the extension of the road will show that the assent given was qualified by conditions, which the appellee neither alleges nor pretends it has com-

plied with. The rule stated in the case of the *Union Bank vs. Poultney*, 8 *G. & J.*, 324, properly applies here, and we accordingly hold that the averments of performance by the appellee of the contract set up by the bill, are wholly unsatisfactory and insufficient, whether they be considered with reference to the certainty and mutuality of the contract, or as evidence of a license from the appellant, upon which the appellee could found any right to protection in a Court of Equity. The principles or rules observed by the Courts of this State in granting injunctions, as well as in cases of contracts, where relief is sought by way of specific performance, are well settled and familiar, so much so, that we deem a particular review of the authorities supporting them unnecessary. As the bill stands, we are clearly of opinion that it does not show such a contract as a Court of Equity can enforce by decree, and, failing in that, it follows that the injunction, which was intended to aid the general relief sought by the bill, was improperly granted. We shall therefore reverse the order granting the injunction, and remand the case.

*Order reversed with costs to the appellant,*
*and cause remanded.*

(Decided May 25th, 1864.)