WILLIAM O. SPRIGG *vs.* THE WESTERN TELEGRAPH COMPANY, WILLIAM ORTON, and others.

*Injunction—Corporations—Telegraph Company—Question as to how far a Telegraph Company created by Special Act of the Legislature, can be re-organized under the General Corporation Act of 1868, ch. 471.*

In all *ex parte* applications for injunction, it is the duty of the complainant to make a *full and candid disclosure* of all the facts within his knowledge, touching the subject-matter in regard to which relief is prayed. There must be no *misrepresentation,* or *concealment,* or *keeping in the back-ground,* of important facts of which the Court ought to be advised.

Where a complainant, seeking an injunction, omits from his bill material facts in regard to which he had knowledge, or was put upon the inquiry, and had the means of ascertaining, and ought to have ascertained them before instituting the proceeding, such omission is, in itself, a sufficient ground to disentitle him to this summary process of the Court.

The Western Telegraph Company was incorporated by a special Act of Assembly, 1846, ch. 39, for a period of thirty years, and the Legislature reserved to itself the right to alter and amend the charter at pleasure. Shortly before the expiration of this charter, steps were taken by a majority of the stockholders to re-organize under the General Corporation Act of 1868, ch. 471. On a bill filed by a stockholder for an injunction to restrain this re-organization, it was HELD:

1st. That there was nothing in the Act of 1846, to prevent a majority of the stockholders from organizing under the Act of 1868.

2nd. That the reservation by the Legislature of the power to alter and amend its charter at pleasure, became part of the contract between the State and the corporators, and the exercise of it in no manner impaired the obligation of a contract within the meaning of the Constitution of the United States.

3rd. That the amended or substituted charter may be conferred by a special Act, or by a general law authorizing the corporation to organize under such general law; and if such amended or substituted charter is accepted by a

majority of the stockholders, such acceptance is binding upon all the members of the corporation, unless the orginal purpose of the corporation be · changed by such charter.

4th. That the alteration of the charter may be as lawfully made by the substitution of a new charter as by the amendment of the old, provided such substituted charter be germane, and necessary to the objects and purposes for which the company was organized.

5th. That the proposed organization under the Act of 1868, is not liable to the objection, that it will effect a radical and fundamental change, in the objects and purposes for which the original company was chartered.

6th. That the mere grant of additional powers auxiliary to the original design does not constitute such radical and fundamental change.

APPEAL from the Circuit Court of Baltimore City.

The Western Telegraph Company was created by special Act of the Legislature of Maryland, 1846, ch. 39, to continue for a period of thirty years. And the Legislature reserved to itself the right to alter and amend the charter at pleasure. Shortly before the expiration of this charter, steps were taken by a majority of the stockholders to re-organize under the General Corporation Act of 1868, ch. 471. The present bill was filed by one of the stockholders to obtain an injunction to prevent said re-organization, the Western Telegraph Company and the stockholders charged with attempting to effect said re-organization, being made the defendants.

The application for the injunction was set down for hearing, an answer was filed by the defendants, and the Court, (PINKNEY, J.,) after a hearing upon the bill, answer and exhibits, passed an order refusing the injunction.

From this order the present appeal is taken by the complainant. The case, in other respects, is sufficiently stated in the opinion of the Court.

The cause was argued before STEWART, GRASON, MILLER, ALVEY and ROBINSON, J.

*John K. Cowen* and *John H. B. Latrobe*, for the appellant.

Without the consent of all the stockholders, the action of the new company under these circumstances would be equivalent to taking the property of an individual without his consent, and to give to the Act of 1868, ch. 471, such a construction would make it operate to impair the obligation of a contract, and therefore be unconstitutional. See *Green's Brice's Ultra Vires,* 539, *et seq., and note pp.* 543–4-5.

A fundamental change in the charter of a corporation by act of a majority of the stockholders will be prevented by an injunction at the suit of an individual stockholder, although such action is authorized by express Act of the Legislature. *Stevens vs. Rutland & Burlington R. R. Co.,* 29 *Vermont,* 547.

If the Legislature intended by the Act of 1868, to alter the charter of 1846, ch. 39, in the exercise of the right to " alter or annul" given by the 17th section, then the Act of 1868 would be unconstitutional, because it would impair the obligation of a contract, "it would compel a dissenting stockholder to transfer his interest, because two-thirds of his co-stockholders desired to do so." *Clearwater vs. Meredith,* 1 *Wallace,* 25-39-40.

In this last case, under the general railroad law of Indiana, passed May 11th, 1857, the Cincinnati, Cambridge and Chicago Short Line R. R. Co., was organized. There was no provision in the Act permitting railroad corporations to consolidate their stock, but it did contain the following clause: " This Act may be amended or repealed at the discretion of the Legislature." A general Act, passed February 23rd, 1853, authorized all railroad companies in Indiana to unite and consolidate their roads with any other road or roads, constructed, or in the process of construction. It was held, that " this Act of the Legislature of Indiana, was permissive and not mandatory. That

in conferring the authority to consolidate, the Legislature never intended to compel a dissenting stockholder to transfer his interest, because a majority of the stockholders consented to the consolidation. Even if the Legislature had manifested a purpose to do so, the Act would have been illegal, because it would have impaired the obligation of a contract." "If a majority of the stockholders of a corporation, of which he (the plaintiff,) was a member, had undertaken to transfer his interest against his wish, they would have been enjoined. There was no power to force him to join the new corporation, and to receive stock in it, on the surrender of his stock in the old company." See pp. 40, 41.

The following authorities sustain the above views : *McCray vs. Junction R. R. Co.*, 9 *Indiana*, 358 ; *Bove vs. Junction R. R. Co.*, 10 *Indiana*, 93; *Oldtown & Lincoln R. R. Co. vs. Veazie*, 39 *Maine*, 571; *Zabriskie vs. Hackensack R. R. Co.*, 3 *C. E. Green*, 178; *Kenosha & Rock Island R. R. Co. vs. Marsh*, 17 *Wisconsin*, 17 ; 7 *C. E. Green*, 260, &c., and argument of counsel.

In this last case, a corporation was organized to build a railroad from A. to B. By another Act of the Legislature, amending its charter, it was authorized to make a road from A, to C. Held, that dissenting stockholders were released from their obligations by this attempt to change the charter of the company. *Redfield on R.*, *vol.* 1, *p.* 196, *sec.* 36 ; *Same, vol.* 2, *p.* 656, *sec.* 252 ; *Am. Law Rev.*, *N. S.*, *vol. XI, p.* 1, &c.

The power to alter or annul the Act of incorporation may authorize the taking away of a charter, but does not authorize the imposition of a new charter and the creation of a new company. *Zabriskie vs. Hackensack & New York R. R. Co.*, 3 *C. E. Green*, 178 ; *Black vs. Delaware & Raritan Canal Company*, 9 *C. E. Green*, 463.

The defendants' answer admits the equities set forth in the bill, but seeks to avoid them by setting up new matter.

On an application for a preliminary injunction, it is the rule of equity, that the new matter cannot be considered until proved in the cause. *Hardy vs. Summers,* 10 *G. & J.,* 316; *Barroll's Chancery Practice,* 303; *Ringgold vs. Ringgold,* 1 *H. & G.,* 12; *Glenn, Adm'r vs. Hebb,* 12 *G. & J.,* 271; *Salmon vs. Claggett,* 3 *Bl.,* 141.

*Attorney General Gwinn,* for the appellees.

The answer filed in this case was responsive in all its parts, to the substance of the bill—that is to say, to the allegations expressed and implied by the bill; and ought, upon the hearing on bill and answer, to have been taken as true. *Dorsey vs Hagerstown Bank,* 17 *Md.,* 412. It fully denied all the expressed and implied equities of the bill.

The replication, filed by the appellant, had no operation whatever upon his motion for an injunction. Upon the hearing of a motion for an injunction, upon bill and answer, a replication cannot be considered. If the answer is responsive, and denies the equities of the bill, it must be taken as true, whether a replication be filed or not.

It is moreover the duty of a party asking for an injunction, to bring under the notice of the Court, all facts material to the determination of his right to that injunction. It is no excuse for him to say that he was not aware of the importance of any facts, which he has omitted to bring forward. And if it appears by the defendant's answer, that there are questions of fact, or law, on which the right of the complainant to the injunction depends, the Court, even if not *controlled,* but only *cautioned,* by the answer, ought to refuse a preliminary injunction. The jurisdiction of the Court in granting *ex parte* injunctions, is not a matter which can be demanded of right by a complainant, but rests within the sound discretion of the Court; and the power ought to be exercised with extreme caution. *State vs. Jarrett,* 17 *Md.,* 330 ; *Nusbaum vs. Stein,* 12

*Md.*, 318 ; *Reddall vs. Bryan*, 14 *Md.*, 476 ; *High on Injunctions, page* 4 ; *Bonaparte vs. Camden & Amboy R. R. Co., Baldwin*, 217, 218. Because the power is a hazardous one, which may be used to the injury of others, and a strict hand should be held over those who come with such applications. 2 *Joyce on Injunctions*, 1034 ; *Attorney General vs. Mayor of Liverpool*, 1 *Myl. & C.*, 13 *Eng. Ch. Rep.*, 343.

The doctrine stated in *Dalglish vs. Jarvie*, 2 *Mac. & G.*, 242, 243, is precisely identical with that enforced by the cases in Maryland, and with other authorities. These have held that if it appears by the bill that an unreserved and candid statement of the matters actually in controversy, has not been made, an injunction ought to be refused. *Keighler vs. Savage Manuf'g Co.*, 12 *Md.*, 383 ; *Johnson vs. Glenn*, 40 *Md.*, 207 ; *Reddall vs. Bryan*, 12 *Md.*, 476 ; *Shoemaker vs. Nat. Mech. Bank*, 31 *Md.*, 396 ; *Canton Company vs. Northern Central R. W. Company*, 21 *Md.*, 398 ; *Kerr on Injunctions*, 1 *Am. Ed.*, 608, and cases cited ; *High on Injunctions, sec.* 11 ; 2 *Joyce on Injunctions*, 1034.

It is the duty of the Court to weigh and balance the inconveniences which would arise from granting or refusing the injunction prayed ; and to refuse the injunction, if greater mischiefs would result from granting than refusing it. *Attorney General vs. Mayor, &c. of Liverpool*, 1 *Myl. & Cr.*, 13 *Eng. Ch. Rep.*, 208 ; 2 *Joyce on Injunctions*, 226 ; *Kerr on Injunctions*, 210 ; *High on Injunctions, sec.* 13.

It would seem to be clear, upon principle and authority, that when a charter is granted to a corporation, and the Legislature reserves, in the charter itself, the power to amend such charter, or to repeal it, the Legislature may, at its pleasure, wholly revoke the entire grant and so dissolve the corporation. *Miller vs. State*, 15 *Wallace*, 497 ; *Tomlinson vs. Jessop*, 15 *Wallace*, 457 ; *County Commis-*

*sioners of Washington County vs. Franklin R. R. Co.*, 34 *Md.*, 161, 162, 163 ; *State vs. Northern Central R. R. Co.*, 44 *Md.*, 165 ; *Mumma vs. Potomac Co.*, 8 *Peters*, 286 ; *Penn. College Cases*, 13 *Wallace*, 218.

If the Legislature may alter or annul an Act of incorporation at its pleasure, when the corporation has agreed that it may exercise the power, it may assuredly, with the consent of the corporation, make the alteration as lawfully by the substitution of a new charter as by the amendment of the old charter.

If the new charter is germane, and necessary to the purposes for which the old charter was granted, and is accepted by the corporation, it is as obligatory upon all the members of the corporation, as if it were an amendment to the old charter. It has, in law, only the force and significance of an amendment.

The amended or substituted charter may be conferred by special Act or by general law, authorizing the corporation to incorporate itself under such general law for the continued performance of the functions, with which it was entrusted under its special charter.

Such legislation " is not one of those fundamental radical changes, which diverts the funds from the original purpose to which they were dedicated, or is manifestly prejudicial to the stockholder, but comes within that class of cases, in which the change was held to be auxiliary to the original object of the incorporation, and beneficial to the stockholders." *Taggart vs. Western Maryland R. R. Co.*, 24 *Md.*, 597 ; *Clearwater vs. Meredith*, 1 *Wallace*, 40.

If the amending law, or the new charter, or the general law, provides for the acceptance of such changes, so authorized by a majority of the stockholders of a corporation, and such majority desires to accept such altered powers in due form, no minority of stockholders can object. *Korn & Wisemiller vs. Mutual Insurance Society*, 6 *Cranch*, 192 ; 2 *Cond. Rep. U. S.*, 345 ; *White vs. Syracuse & Utica R.*

*R.*, 14 *Barb., N. Y.*, 559; *Joslyn vs. Pacific Mail S. S. Co.*, 12 *Abbott's Pr. Rep., N. S.*, 333; *Corry vs. Scott*, 54 *Penna. St.*, 270; *Buffalo & N. Y. City R. R. Co. vs. Dudley*, 14 *N. Y.*, 4 *Kernan*, 349; *Bishop vs. Brainerd*, 28 *Conn.*, 289; *Attorney General vs. Davy*, 2 *Atk.*, 212; *Central R. R. vs. Georgia*, 2 *Otto*, 671.

The will of a majority of a corporation must govern in the adoption of an amendment to their charter, unless there be fraud, or the original purpose of the corporation be entirely changed by the amendment. *Sprague vs. Illinois River Railroad Co.*, 19 *Ill.*, 174; *Joy vs. Jackson, &c., Co.*, 11 *Mich.*, 155; *White vs. Syracuse & Utica R. R. Co.*, 14 *Barb.*, 559; *Troy & Rutland R. R. Co. vs. Kerr*, 17 *Barb.*, 581; *Clearwater vs. Meredith*, 1 *Wallace*, 40.

ROBINSON, J., delivered the opinion of the Court.

This is an application by the appellant, a stockholder of the Western Telegraph Company, for an *injunction* to restrain the appellees and other stockholders, from organizing under the Act of 1868, ch. 471, known as the General Corporation Law of this State.

It can hardly be necessary to repeat what we have so often said, that in all *ex parte* applications of this kind, where the Court is asked to interfere by a process so summary in its character, and so liable therefore to be abused, it is the duty of the complainant to make a *full and candid disclosure* of all the facts within his knowledge, touching the subject-matter in regard to which relief is prayed. There must be no *misrepresentation*, or *concealment*, or *keeping in the back-ground*, important facts, of which the Court ought to be advised, otherwise this strong arm of the law, which is interposed only to prevent positive and substantial injury, may become the instrument of wrong and oppression. *Keighler vs. Savage Manuf'g Co.*, 12 *Md.*, 383; *Shoemaker vs. Nat. Mech. Bank*, 31 *Md.*,

491; *Canton Company vs. Northern Central R. R. Co.*, 21 *Md.*, 398; *Kerr on Injunctions*, 608, and cases cited; 2 *Joyce on Injunctions*, 1034.

In *Dalglish vs. Jarvis*, 2 *Mac. & G.*, 242, the law on this subject is thus strongly stated by Baron ROLFE:

" The application for a special injunction, is very much governed by the same principles which govern insurance matters, which are said to require the utmost degree of good faith, *uberrima fides*. In cases of insurance, a party is required to state not only all matters within his knowledge, which he believes to be material to the question of insurance, but all which in point of fact are so. So, if a party applying for a special injunction, abstains from stating facts which the Court thinks are material to enable it to form its judgment, he disentitles himself to that relief which he asks the Court to grant."

Now, it is obvious, the complainant has not, in this case, stated fully and fairly all the facts within his knowledge, in regard to the objects and purposes of the appellees in organizing a new company under the Act of 1868.

He alleges in the bill, that he is the owner of two shares of stock of the Western Telegraph Company, of the par value of one hundred dollars each, upon which he has for many years received semi-annual dividends, and that the appellees and other stockholders are about to create a new corporation under the Act of 1868, and to transfer to the company thus formed, all the rights and property of the Western Telegraph Company, and thus compel the complainant to become a member of the new company. That the formation of the company as proposed, would subject him, against his consent, to obligations different from those assumed by him as a corporator in the old company, and to risks which he never contemplated.

But he does not state that the old company was chartered in 1846, for a term of thirty years, and that the period thus fixed was about to expire, and that the Legislature

had expressly reserved the right to alter or amend its charter at pleasure. Nor does he state the important fact, that in the contract made between the company and the Baltimore and Ohio Railroad Company, and under which it acquired the license to construct, maintain, and operate a line of magnetic telegraph, upon and within the limits of said railroad, it was stipulated among other things, that in the event of a dissolution of the telegraph company, or a suspension of operations, either voluntary or in consequence of legal process, the railroad company was authorized to take charge of the telegraph line until the company should resume active operations.

He also omits to state, that in 1859, the Telegraph Company leased all its lines to the American Telegraph Company for a period of thirty years, at a rental of ten thousand, five hundred and seventy-six dollars per year, free from all deductions for expenses, wear and assessments, and that this rental constituted the sole income from which the complainant and other stockholders derived the semi-annual dividends on their stock.

These *material facts*, it is but fair to presume, were known to the complainant, or if he had not actual knowledge, he was put upon the inquiry and had the means of ascertaining, and ought to have ascertained them before instituting a proceeding of this kind. And he not only fails to state these facts, but leaves the Court to infer, that if no steps were taken by the appellees and other stockholders to organize under the Act of 1868, the old company would still retain and exercise the rights and franchises granted by its charter, and would still remain in possession of its property, and that he and other stockholders would continue to receive the semi-annual dividends on their stock, or in the event of a dissolution, the property would be distributed among the stockholders. The failure on the part of the complainant to state these facts, so important and material to enable the Court to act

with due regard to the rights and interests of all parties, is in itself a sufficient ground to disentitle him to this summary process of the Court. *Reddall vs. Bryan, et al.,* 14 *Md.,* 476.

But in addition to this, when the bill is read in connection with the answer and exhibits, it is difficult to imagine on what principles of equity the complainant can ask the interference of the Court, because the organization under the Act of 1868, was absolutely necessary to prevent the property of the company from passing into the possession and under the control of the railroad company, and also necessary to enable the telegraph company to perform its covenants under the lease from which its entire income was derived.

Independent of these objections, we deem it proper to add, that we find nothing in the Act of 1846, incorporating the Magnetic Telegraph Company to prevent the appellees, and others constituting a majority of the stockholders from organizing under the Act of 1868. In conferring corporate powers upon the company, the Legislature expressly reserved the right to alter or amend its charter at pleasure. This reservation became part of the contract between the State and the corporators, and the exercise of it in no manner impairs the obligation of a contract, within the meaning of the Constitution of the United States. *State vs. Northern Central R. R. Co.,* 44 *Md.,* 165; *Miller vs. State,* 15 *Wallace,* 497; *Tomlinson vs. Jessup,* 15 *Wallace,* 457.

And it is equally clear, we think, that this amended or substituted charter may be conferred by a special Act, or by a general law authorizing the corporation to organize under such general laws; and if such amended or substituted charter is accepted by a majority of the stockholders it is clear upon principle and upon authority, that such an acceptance is binding upon all the members of the corporation, unless the original purpose of the corporation be

changed by such charter.  *Korn & Wisemuller vs Mutual Ins. Co.*, 6 *Cranch*, 192; *Central R. R. Co. vs. Georgia*, 2 *Otto*, 671; *White vs. Syracuse & Utica R. R.*, 14 *Barb.*, *N. Y.*, 559; *Joslyn vs. Pacific Mail S. S. Co.*, 12 *Abbott Pr. Rep.*, *N. S.*, 333; 4 *Kernan*, 349; *Bishop vs. Brainerd*, 28 *Conn.*, 289.

If then the Legislature has the power to alter or annul the charter of the Telegraph Company, because the corporation has agreed it may exercise this power, it may assuredly make the alteration as lawfully by the substitution of a new charter as by the amendment of the old charter, provided such substituted charter be germane, and necessary to the objects and purposes for which the company was organized.

The inquiry then is, whether the proposed organization under the Act of 1868, is a radical and fundamental change in the objects and purposes for which the original company was chartered.  We have examined the provisions of the Act of 1868, in connection with Act of 1846, incorporating the Telegraph Company, and are of opinion that the proposed organization is not liable to this objection.  On the contrary, the number of shares of the capital stock, the property, business, objects and purposes of the company remain the same, and under the new charter each stockholder of the old company will be entitled to an equal number of shares in the new, and of the same par value.

It is true, additional powers are conferred upon the company by the Act of 1868; the power for instance to consolidate with and lease other lines, but whatever conflict there may be in the decided cases as to what constitutes a fundamental change in the charter, they all agree that the mere grant of additional powers auxiliary to the original design, is not liable to that objection.  *Clearwater vs. Meredith*, 1 *Wallace*, 25; *Green's Brice's Ultra Vires*, 80, 84, and cases cited.  Without reviewing the several cases relied on by the appellant, it is sufficient to say, that upon an

examination of them, it will be found that the changes were radical and fundamental, or that the Legislature had not reserved the power to amend and alter the charters.

In any aspect therefore, in which this case may be viewed, we are of opinion, that the injunction was properly refused.

*Order affirmed.*